**Bliss Ring Company, Inc., Plaintiff-Appellant, v. Globe and Rutgers Fire Insurance Company, Defendant-Appellee.**

**Gen. No. 10,838.**

Second District.

November 5, 1955.

Released for publication November 22, 1955.

Bozeman, Moran & Klockau, of Moline, Angerstein & Angerstein, and Charles T. Shanner, all of Chicago, for appellant.

Huber, Reidy & Katz, of Rock Island, and Samuel Levin, of Chicago, for appellee.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

The complaint in this case alleged, among other things, that on, prior, and subsequent to January 23, 1952, it was engaged in the wholesale jewelry business and in the prosecution of its business employed divers salesmen to sell its products to retail dealers located in this state and elsewhere; that on September 16, 1952, one of its salesmen was T. E. Thorsen, who had in his possession certain articles of jewelry and cases for the transportation thereof belonging to the plaintiff, of the value of $3,728.43, which were stolen by a person or persons unknown from an automobile owned by said Thorsen while he, the said Thorsen, was actually in said automobile, and that said occurrence took place near the Rock Island Arsenal in Rock Island County, Illinois.

Attached to and made a part of the complaint was a photostat of a Jewelers Block Policy referred to in the complaint which was issued by defendant to the plaintiff effective January 24, 1952, and expiring January 24, 1953. By its terms this policy insures precious and semi-precious stones, jewels, watches and jewelry owned by the assured to the extent of $5000 "against all risks of loss of or damage to the above described property arising from any cause whatsoever except loss or damage to property insured hereunder while in or upon any automobile, motorcycle or any other vehicle unless, at the time the loss occurs, there is actually in or upon such vehicle, the Assured, or a permanent employee of the Assured, or a person whose sole duty it is to attend the vehicle." The policy also provided that the property described is covered anywhere in, and in transit within and between, the continental United States, "but subject always to the conditions, exclusions and exceptions stated herein."

The answer of the defendant admitted the allegations of the complaint as to the character of defendant's business and the issuance by it of the policy of insurance as alleged. It admitted the giving of notice of loss and demand for payment and defendant's refusal to pay. It denied the employment of Thorsen as a salesman for plaintiff and denied that the jewelry and cases were stolen from an automobile owned by Thorsen while Thorsen was actually in said automobile and denied that such occurrence took place near the Rock Island Arsenal as alleged. The issues so made by these pleadings were submitted for determination to the court, without a jury, resulting in a finding and judgment for the defendant and plaintiff appeals.

Thorwald Thorsen testified in substantiation of the plaintiff's charge that its jewelry was stolen by an unknown person or persons from the automobile owned by Thorsen while he, Thorsen, was actually in said automobile near the Rock Island Arsenal. He testified,

upon direct examination, that at the time of the trial he was sixty years of age and for the past four years had represented plaintiff as a jewelry salesman; that he had customers in Davenport, Moline, and Rock Island, and on September 16, 1952, in the course of his employment, he arrived in Davenport at about 9:30 o'clock in the morning and called upon certain customers; that he owned and had a 1951 Ford automobile, hard top, referred to as a Victoria, and which had the usual trunk compartment in the rear which opened with a key. Thorsen further testified, as abstracted: "Upon my arrival in Davenport, I drove into the parking lot on Main next to the library. I am not sure of the name. The attendants there will park your car. You are not permitted to park it yourself. At the time I left there I didn't see where they parked it. It was in the drive way when I returned. It was parked directly in front of the attendant's house, at slight angles to the right facing the attendant's office. The rear of the car was towards the sidewalk. When I made those calls I had the jewelry with me. The last call I made was at Plank Company located across the street on the same side of the street as the parking lot about 200 feet down. When I finished with that call at the Plank Company I went to the parking lot. At that lot they take your keys, and I had obtained my keys and I told the attendant I was going in next door to get a cup of coffee which is the coffee shop or Dunkette Shop which is on the same lot and approximately 50 feet from the car. My reason for telling the attendant that was that I didn't think it was necessary to hand the key back. I placed the grip in the rear of the car, put the keys in my pocket, went in next door, got a cup of coffee and a doughnut, and I told the attendant where I was going and I said I was only going to be gone a few minutes. 'I will keep the keys.' It was approximately 4:00 in the afternoon when I checked out. When I put those cases in the trunk, I locked the

trunk to the best of my knowledge. On that car, I don't recall whether it was a so-called slam lock or whether I had to turn the key. I just don't remember. I had the bag in my possession all the time from the time I left Plank's Jewelry until I put it in the car. When I got back from the coffee shop I got to the car and proceeded to the home of my sister-in-law, Mrs. Thomas Goyins, who lives at 1516 26th Street, Rock Island. There is only one exit on the parking lot. The exit is on Main Street and as I recall on that day I could not make a left turn due to the heavy traffic so I made a right turn, went completely around the block, then proceeded down to the Government bridge, across the bridge and straight out that street. I cannot tell you the name of the Street. I believe I checked out about 4:00 P.M. I would say it probably would have taken only six-eight minutes to get down onto the Government bridge. It would have been a little after 4:00. The Government bridge does not go straight across the river. It makes a curve particularly to the right where the Arsenal road from Rock Island proceeds straight; coming from this direction from Rock Island you have to make a right turn there. You make a right turn where the entrance is for the Arsenal itself, the employees. When I got up towards that entrance I stopped there. The traffic was coming out of the Arsenal. It was very heavy traffic. There's a stop sign there and there was a policeman directing traffic. The policeman was way across the road, facing my car in the other direction. I would say my car was approximately 150 feet from the policeman. I was the first car in line. It is hard to judge how long I remained there when I was waiting. It was a considerable time. It was a very hot day and I turned on the radio. I had heard about this stop there. I had heard previously from my brother-in-law who works at the plant that the plant traffic had right of way regardless how long it took them to get out. As a civilian on the other road who was just

waiting, I would say approximately 12–15 minutes. I leaned back on the seat and dozed. I am five feet eight inches tall. When my lane of traffic moved, I proceeded on to the home of my sister-in-law, at the address in Rock Island I have given. When I got home, I drove up the alley as usual along side of his garage. Got out of the car, unlocked the rear compartment and found both bags gone. I didn't even stop to go in the house. I jumped in the car and dashed back to Davenport to the police department. I went back by the Centennial Bridge. I did not go back on the same bridge. I was afraid of being held up by the traffic. I went to the parking lot first and asked them to call the police department. I don't know the man's name to whom I talked. He was one of the attendants. I thought at first he was one of the young men I saw this morning but I can't be sure. I don't recall if the policeman came down. He said the police headquarters was just around the corner and I did go up there immediately." In answer to the question by counsel for plaintiff, "Do you know when or where the bags of jewelry were removed from your car?" the witness answered, "No, I do not;" and to the further question, "Did you do it?" replied, "No, sir, I did not."

Upon cross-examination, Mr. Thorsen was asked this question: "Is it your belief in this case that a stranger, while you were dozing at a cross-sign waiting for clearance for traffic and listening to a radio, opened the trunk of your car at that point?" His reply was "I frankly don't know." He further testified that he knew the provisions of the insurance policy previous to September 16, 1952; that at the Goyins residence, after he discovered the case containing the jewelry was missing from the trunk of his car, he returned to the parking lot because "I was under the impression that it was stolen while I was there." He further testified that he was the only one who had possession of a key to the trunk of his car; that the trunk required a separate key

528

to open it; and that he knew of no duplicate key in the hands of anyone else.

Oscar J. Kraft testified on behalf of the plaintiff that he was employed as an attendant at the Seydel Parking Lot on September 16, 1952, and had been since February of that year. He identified some photographs of the lot which were offered and admitted in evidence and testified that he recalled that Thorsen came to the parking lot, checked his car, and later returned, paid the witness for parking, had some conversation about checking the bags at the office but decided not to and then told the witness that he was going to get a cup of coffee and left and was gone not more than ten minutes; that during this period of time, the Thorsen car was approximately forty feet from the office on the parking lot and was never out of his range of vision. This witness further testified that the rear of the Thorsen car was parked two or three feet from the sidewalk along Main Street and that a safety cable strung through posts around the lot served as a safety bumper. On cross-examination, Mr. Kraft testified that during this ten-minute period he checked out three or four cars and did not mean to state on direct examination that when he was handling another car he was looking at the Thorsen parked car.

Thomas Morrell, another witness called by the plaintiff, testified that he was a desk sergeant connected with the Davenport police department and that in September, 1952, the theft of some jewelry occurring in Seydel's Parking Lot was reported to him, that he made an investigation and, during the course of the investigation, he had conversations with Mr. Thorsen who told him on more than one occasion that the loss of plaintiff's jewelry occurred while his (Thorsen's) car was in the parking lot.

On behalf of the defendant, Wm. R. Kruse testified that he was captain of the police department of Davenport, Iowa, and that on September 17, 1952, Thorwald

Thorsen came to the detective bureau in the city hall in Davenport and said he wanted to talk over the theft of around $14,000 jewelry supplies that he had in his car on the parking lot the previous day; that Thorsen did not indicate in any of his statements to this witness that the loss could have happened at any other place, and stated that the parking lot was the only place it could have occurred. Detective Otto Hansen, also connected with the Davenport police department, testified that he and Wm. Kruse went down to the parking lot at Third and Main Streets with Thorsen who told them (Kruse and Hansen) that the jewelry was stolen out of his car at this parking lot. John Hellstrom, an attorney with offices in Davenport, testified on behalf of defendant that he made an investigation with reference to this jewelry loss on behalf of the owner of the parking lot; that he requested Thorsen to come to his office and discuss the matter, which Thorsen did on the morning of September 17, 1952, and in the course of his conversations with Thorsen, he, Thorsen, said the keys to the trunk of his car were in his possession, that he never loaned or gave them to anybody; that the only place he thought the theft could have occurred was in the parking lot; that when he left the parking lot the previous afternoon, he drove directly to his sister-in-law's home where he discovered the loss, and in answer to the question of the attorney whether he made any stop enroute, Thorsen replied: "No, it was just normal driving, normal driving conditions."

The foregoing is a fair resume of the evidence pertinent to this appeal. Counsel for appellant insists that the policy issued by appellee insured it against all risks of loss or damage; that its complaint alleged and the evidence proved a loss explicitly insured against, and that appellee failed to meet its obligation to prove that the loss was excluded from the policy. Counsel for appellee argue that the complaint alleged that the jewelry covered by the policy was stolen by an unknown

person or persons from an automobile owned by Thorsen while he, Thorsen, one of plaintiff's salesmen, was actually in the automobile near the Rock Island Arsenal and as the answer of defendant denied these allegations, the only issue tried in the lower court was where the alleged loss took place. Counsel insist that plaintiff had the burden of proving the material allegations of its complaint and having failed to do so, the only judgment warranted by the evidence was the judgment rendered by the trial court.

The experienced trial court in making the findings he did stated that the contention of the plaintiff at the trial was that the theft occurred when Thorsen's car stopped near the Rock Island Arsenal; that the case was presented to him as a question of fact; that he did not give much credence to the testimony of Oscar J. Kraft; that the parking lot, while Thorsen was having his brief lunch, and his car was located therein as the evidence disclosed it was, afforded a perfect time and place for a jewel theft; that when Thorsen decided he had been robbed, his first thought would be as to where it might have taken place and he thought it occurred at the parking lot; that he (the court) did not believe the theft occurred near the Rock Island Arsenal as he deemed it highly improbable that a person or persons could go to the first car in a string of occupied cars, open the trunk and remove the cases of jewelry therefrom without observance; that he did not decide the question whether there had been or had not been a theft; that he felt the issue presented was not whether a theft happened, but where it occurred and that the attitude of Thorsen at the time it occurred made its impression on him as a judge.

Under the provisions of the policy upon which this action is based, as applied to the facts appearing in this record, appellant was required to allege that its insured articles of jewelry were lost to it while in an automobile and at the time the loss occurred, a

531

permanent employee of the plaintiff or a person whose sole duty it was to attend such vehicle was actually in or upon such vehicle. Appellant did so. Its complaint alleged that its salesman, Thorsen, had in his possession at a date when the policy was in effect, certain described jewelry belonging to the plaintiff; that this jewelry was stolen near the Rock Island Arsenal by an unknown person or persons from an automobile owned by Thorsen while he, Thorsen, was actually in said automobile. The evidence fell far short of proving these allegations. The trial court did not decide whether there was a theft or not. It did find that it was highly improbable that the loss occurred at the place alleged in the complaint and concluded from the evidence that it did not occur there and that was the only place it could have occurred when a permanent employee of the plaintiff or a person whose sole duty it was to attend the automobile in which the jewelry had been placed was actually in or upon such vehicle. The findings of a trial court without a jury will not be set aside unless manifestly against the weight of the evidence. (Goldfarb v. Maryland Casualty Co., 311 Ill. App. 568, 572.) The evidence found in this record sustains the findings and judgment of the trial court.

Counsel for appellant state that the question to be resolved by this court is whether a loss within the meaning of the policy took place and insist that the evidence discloses there was a loss and counsel therefore concludes that plaintiff is entitled to judgment unless defendant proved by the greater weight of the evidence that the case fell within an exception contained in the policy. In an action upon an insurance policy the plaintiff must plead and prove that his loss was caused by one of the perils insured against. (Swan v. Union Ins. Co., 16 U. S. (3 Wheat.) 168; Rubenstein v. Fireman's Fund Ins. Co., 339 Ill. App. 404, 407.) In the instant case it devolved upon appellant to allege and prove that its loss was covered by the provisions

532

of the policy under which it seeks to recover. Appellant did prove a loss but failed to prove that its loss was covered by the provisions of the policy upon which this action is based. It attempted to do so, and its theory in framing its pleadings and in submitting evidence in support thereof was that the jewelry was taken from the trunk of Thorsen's car near the Rock Island Arsenal. The conclusion of the trial court that this was "highly improbable" is supported by the following: (1) The evidence does not show that the trunk of Thorsen's car when it stopped at the Rock Island Arsenal crossing contained the stolen jewelry. (2) This trunk, at that time, was locked. (3) This car was the first in a line of cars stopped to yield the right of way to cross-traffic. (4) A policeman was 150 feet away facing the front of Thorsen's car. (5) Cars were lined up behind Thorsen's car bumper-to-bumper. (6) The door of the trunk had to be "slammed" in order to make sure it was locked. (7) Thorsen never heard any noise from his trunk while so stopped. (8) The trunk was locked the next time he stopped when he arrived at the home of his sister-in-law. (9) When traffic was resumed, after the stop near the arsenal, Thorsen was alert and moved upon the signal to proceed. (10) Thorsen's immediate return to the parking lot after discovering his loss and his report of the theft to the attendants there. (11) Thorsen's subsequent statement that the loss occurred while his car was in the parking lot and his further statements, written and oral, that he made no stops on his drive from the parking lot to the home of his sister-in-law and that traffic was normal.

The trial court correctly held that the allegations of the complaint were not sustained by the evidence, and its judgment is affirmed.

Judgment affirmed.

CROW and EOVALDI, JJ., concur.