RUTGENS DISTRIBUTORS, INC., Plaintiff-Appellant, *v.* UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant-Appellee.

Third District   No. 80-235

Opinion filed March 27, 1981.

Eric B. Deobler, of Peter F. Ferracuti & Associates, of Ottawa, for appellant.

Sanford R. Gail and A. Bruce White, both of Karaganis & Gail, of Chicago, and Andrew J. O'Conor, of Berry & O'Conor, of Ottawa, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

This is an appeal from an order of the circuit court of La Salle County directing a verdict in favor of the defendant insurer, United States Fidelity and Guaranty Company, in an action brought by the plaintiff insured, Rutgens Distributors, Inc., to recover the proceeds of an insurance policy. For the following reasons, we reverse and remand.

In December of 1978, the plaintiff purchased from the defendant insurer a fire, lightning, and extended coverage insurance policy. The building owned by the insured that was covered by the policy was a combined warehouse, office and garage located on Water Street in Peru, Illinois. Section VI of the policy, captioned "Perils Insured Against," provided in pertinent part:

"This policy insures against all direct loss caused by:

\* \* \*

> 5. EXPLOSION, including direct loss resulting from the explosion of accumulated gases or unconsumed fuel within the firebox (or combustion chamber) of any fired vessel or within the flues or passages which conduct the gases of combustion therefrom.
>> A. This Company shall not be liable for loss by explosion of steam boilers, steam pipes, steam turbines or steam engines, if owned by, leased by or operated under the control of the Insured.
> B. The following are not explosions within the intent or meaning of these provisions:
>>> (1) Shock waves caused by aircraft, generally known as 'sonic boom',
>>> (2) Electric arcing,
>>> (3) Rupture or bursting of rotating or moving parts of machinery caused by centrifugal force or mechanical breakdown,
>>> (4) Water hammer,
>>> (5) Rupture or bursting of water pipes,
>>> (6) Rupture or bursting due to expansion or swelling of the contents of any building or structure, caused by or resulting from water,
>>> (7) Rupture, bursting or operation of pressure relief devices."

On January 14, 1979, the plaintiff's warehouse was destroyed. Alleging that the building was destroyed by an internal explosion, the plaintiff sought to secure the benefits of the insurance policy. The insurer, however, refused to indemnify the plaintiff. Consequently, the plaintiff brought suit against the defendant in the circuit court of La Salle County seeking to recover the policy limit of $40,000. In its complaint, the plaintiff alleged that the building was destroyed by a peril that was insured against under the policy, *i.e.*, an internal explosion. The insurer disagreed, however, responding in its answer that "said loss was not occasioned or caused by an explosion pursuant to the terms of said policy."

The jury trial on plaintiff's complaint began on April 21, 1980. In his opening remarks, the plaintiff's counsel stated that the evidence would show that the insured building was indeed destroyed by an explosion. He also stated that expert testimony would be presented which would show the cause of the explosion to be a malfunctioning pilot light in one of two gas furnaces located in the building. According to counsel, the malfunctioning pilot light allowed fuel to accumulate, and this fuel was eventually ignited by the pilot light of the functioning furnace. In his opening remarks, defense counsel suggested to the jury that it was not an internal explosion that demolished plaintiff's building, but rather a collapsed roof due to heavy snow accumulation. In concluding, defense counsel advised the jury that "[t]he sole question for you to determine is whether the collapse of this roof was caused by an explosion."

Three witnesses testified on the plaintiff's behalf: David Rutgens, the president of Rutgens Distributors, Inc., Jay Trexler, a consulting engineer, and Michael McVey. Rutgens testified that there were two Rheem gas furnaces located in the warehouse, one located in the southwest corner, the other in the southeast corner. The furnace in the southwest corner operated normally. However, in December of 1978 Rutgens began to have trouble in the form of a malfunctioning pilot light with the southeast furnace. On several occasions in late December and early January of 1979, Rutgens had to relight the pilot light in order to operate the furnace. Finally, on January 4, he was unable to relight the pilot. On that day the furnace was repaired by a serviceman from a local heating firm. Rutgens testified that from January 4 until the day the warehouse was destroyed he experienced no problems with the pilot light on the southeast furnace. Rutgens also testified that neither he nor anyone else was present when the building was damaged the morning of January 14. He admitted he did not know what caused the building to be destroyed.

The plaintiff's second witness was its expert, Jay Trexler. Trexler stated that in his capacity as a consulting engineer he had examined approximately 100 buildings over a 10-year period to determine whether

damage had been caused by an explosion. He concluded that upon an examination of plaintiff's damaged warehouse, "there was evidence of an explosion, probably of a relatively low order of magnitude within the building." Trexler was then asked by plaintiff's counsel to give his opinion as to the cause of the explosion in response to a hypothetical question based, *inter alia*, upon the condition of the building after the explosion and the problems with the pilot light of the southeast gas furnace. Trexler stated that in his opinion there was a possible relationship between the malfunctioning furnace and the explosion. On this same subject, the following colloquy occurred between Trexler and defense counsel on cross-examination:

"MR. GAIL: Mr. Trexler were you able to determine the exact location in the building of the explosion which you opined happened?

THE WITNESS: No.

Q. Isn't it correct that you were not even able to determine the cause of *the* explosion?

A. Yes.

Q. With regard to an exact cause for this explosion, would such be pure conjecture on your part?

A. Yes.

Q. So I understand it, when you say, and I speak of conjecture, are we talking about the same type of things such as speculation or guessing?

A. Yes.

Q. And that is because you have no basis from things which you saw out there, and things that you did to form a conclusion as to the actual cause of an explosion, is that not correct?

A. Yes.

* * *

MR. GAIL: Isn't it correct that you did not see any objective evidence of an explosion of any of these furnaces?

THE WITNESS: Yes, to the extent that *I saw objective evidence of an explosion*, I did not have an opportunity to see the furnaces. So, I could not relate the furnaces objectively and actually to a cause." (Emphasis added.)

The final plaintiff's witness was Michael McVey, who lived on Water Street a short distance from the Rutgens warehouse. He said that the morning of January 14 he was in the kitchen of his home when he heard a loud noise (which he described as "big boom"). He looked out of his window, but saw nothing unusual. In fact, he testified that he could not see the warehouse from his house because there is another building

blocking his view. It was not until later that he found out that the Rutgens building had been damaged.

At the close of the plaintiff's case, the insurer moved for a directed verdict on the grounds that plaintiff had failed to prove a prima facie case for coverage under the policy because it had not introduced any evidence on the subject of causation. The court, noting that expert witness Trexler had admitted that his opinion as to the cause of the explosion was based on conjecture only, stated:

> "My feeling is on this evidence that if the only thing that need be proved is an explosion, period, that there is a fact question. If it is necessary to prove an explosion from a certain cause or caused by some degree of certainty, then in view of the evidence, I don't thing [sic] there is sufficient fact question to go to a jury or no prima facie proof of a cause of an explosion."

After argument by counsel, the court concluded that the plaintiff did indeed have the burden of proving the cause of the explosion. Finding there to be insufficient evidence with which to raise a question of fact regarding causation, the court held that plaintiff had failed to make a prima facie case and granted defendant's motion for a directed verdict. It is from the order granting defendant's motion that plaintiff appeals.

■■■ The sole question presented for our consideration is whether the plaintiff, in order to make a prima facie case of a loss within the coverage of the policy issued by the insurer, had the burden of proving not only the fact of an explosion, but also the cause of the explosion. The general rule pertaining to the burden of proof in cases where a question arises as to the coverage of a policy insuring against loss by explosion is succinctly stated in Couch's treatise on the law of insurance: "When the policy covers loss and damage by explosion, the burden of proof is upon the insured to establish that there was an explosion. The insured under the explosion policy, however, has only the burden of proving that there was an explosion and need not prove in what particular way the explosion was caused." (10 G. Couch, Insurance §42:51 (2d ed. 1962); Accord, 44 Am. Jur. 2d *Insurance* §1969 (1969).) The reason for this rule is simple. The coverage that the insured has purchased is coverage against loss from explosion. Therefore, all the insured should have to prove to make a prima facie case within the coverage of the policy is that an explosion occurred. The cause of the explosion is irrelevant unless the insurer, by the very terms of the policy, limits its coverage by excluding explosions from specified causes. In such a situation, however, the burden is upon the insurer to prove that loss by explosion was due to a cause excepted by the policy terms, not upon the insured to prove the contrary. This is consistent with the principle applied in all cases involving contracts of insurance

"that if proof is made of a loss apparently within a contract of insurance, the burden is upon the insurer to prove that the loss arose from a cause of loss which is excepted or for which it is not liable, or from a cause which limits its liability, * * *." 44 Am. Jur. 2d *Insurance* §1967 (1969).

The main cases cited by the insurer in support of its position that the plaintiff in the instant case not only had to prove the fact of an explosion, but also the cause, in order to prove a prima facie case for policy coverage do not depart from this general rule. What distinguishes them from the case at bar is that the very risks insured against in these cases are, by definition, extremely and specifically limited in scope. In *Herrington v. Colonial Life & Accident Insurance Co.* (1970), 133 Ill. App. 2d 814, 264 N.E.2d 53, the policy in question provided coverage for injuries specifically caused by the explosion of a "heavy duty truck." The court correctly held that the plaintiff insured had the burden of proving not just the fact of an explosion, but also that the explosion was of a heavy duty truck, because that was specifically the risk that the policy insured against. In *Bliss Ring Co. v. Globe & Rutgers Fire Insurance Co.* (1955), 7 Ill. App. 2d 523, 129 N.E.2d 784, the policy insured against loss or damage to jewelry owned by the insured, except loss or damage to the jewelry occurring while located in a vehicle unattended by the insured, an employee of the insured, or one whose duty it was to attend the vehicle. The facts disclosed that jewelry was stolen from a vehicle. The court found that in order to recover under the policy, the plaintiff had to allege and prove that the loss was from a risk insured against, *i.e.*, theft from a vehicle attended by the insured, an employee of the insured, or one who had the duty to attend. In *Hotwick v. Equitable Life Assurance Society* (1972), 5 Ill. App. 3d 327, 282 N.E.2d 222, the insurer agreed to pay the beneficiary of a life insurance policy double indemnity benefits upon proof that, *inter alia*, the insured's death was accidental, not directly or indirectly caused by mental infirmity, and not as a result of an attempted assault or felony. The court found that the very language of the policy required that the claimant must prove more than just the fact of accidental death to make a prima facie claim for coverage.

Under the terms of the policy issued by the insurer in the instant case, the risk insured against was not extremely limited, as was the case in *Herrington, Bliss Ring,* and *Hotwick.* Rather, the risk insured against was quite broad: loss caused by explosion. Although it is true that sections VI(5)(A) and (B) limit policy coverage, they do not affect the nature of the risk against which the policy was purchased to insure (see *Pre-Cast Concrete Products, Inc. v. Home Insurance Company* (7th Cir. 1969), 417 F.2d 1323), and therefore do not affect the plaintiff insured's burden of proving the existence of a loss apparently within policy language. Sections VI(5)(A) and (B) are the equivalent of exclusions to policy coverage, the burden of proving which has always rested upon the insurer. (*United*

*States Fidelity and Guaranty Co. v. Brennan* (1980), 88 Ill. App. 3d 467, 410 N.E.2d 613; *Marsh v. Metropolitan Life Insurance Co.* (1979), 70 Ill. App. 3d 790, 388 N.E.2d 1121; *Great Central Insurance Co. v. Harris* (1977), 46 Ill. App. 3d 542, 360 N.E.2d 1151; *Voss v. Bituminous Casualty Corp.* (1977), 52 Ill. App. 3d 49, 366 N.E.2d 159.) Neither the fact that a separate section of the policy (section VII) expressly covers exclusions, nor the fact that section VI(5)(A) and (B) could be categorized as definitional limitations on the insured risk, convinces us that these sections should not be treated as exclusions. Whether an insurer attempts to avoid policy coverage by relying upon an express policy exclusion, or by relying upon a clause which limits coverage through a narrow definition of the insured or the risk insured against, the ultimate same result is accomplished. Therefore, there is no substantive difference between the two. (*Clemmons v. Travelers Insurance Co.* (1980), 88 Ill. App. 3d 201, 410 N.E.2d 445.) If the insurer in the case at bar is of the opinion that no policy coverage exists pursuant to sections VI(5)(A) and (B) of the policy, it is its task as the scrivener to prove the existence of the exclusion. It is not the task of the insured, by proving the cause of the explosion, to negate the possibility that a policy defense may be present.

In light of all of the foregoing, we are of the opinion that neither the facts of this case nor the language of insurer's policy dictates a departure from the general rule that in order to prove a prima facie case of a loss within the coverage of an insurance policy insuring risk of loss from explosion, the insured need only prove the fact of an explosion. The trial court found that at the close of the plaintiff's case there had been enough evidence presented to raise a question of fact for the jury. Consequently, the plaintiff had proven a prima facie case, and the entry of a directed verdict in favor of the defendant insurer upon the grounds that plaintiff had failed to do so was erroneous.

The order of the circuit court of La Salle County is reversed, and this cause remanded for further proceedings.

Reversed and remanded.

SCOTT, P. J., and HEIPLE, J., concur.