### GULF TRANSP. CO. *v.* FIREMANS FUND INS. CO.

[83 South. 730, In Banc. No. 20934.]

1. INSURANCE. *Loss of oil barge not covered by marine policy against "perils of the sea."*

Where an oil barge while being towed in smooth waters within thirty minutes after starting on the voyage broke under the weight of her own cargo, necessitating stranding, on account of initial defective construction, though it had been repaired by the insurer after a previous storm, was not covered by a policy against perils of the sea, barratry, etc., the loss in such case not being proximately caused by a "peril of the sea."

2. APPEAL AND ERROR. *Court will not reverse chancellor unless findings are clearly wrong.*

The supreme court on appeal should not reverse the findings of a chancellor on facts unless he is clearly wrong.

APPEAL from the chancery court of Harrison county. HON. WM. M. DENNY, JR., Chancellor.

Suit by the Fireman's Fund Insurance Company against the Gulf Transportation Company.  From a decree for the defendant for less than it claims against plaintiff, it appeals.

The facts are fully stated in the opinion of the court.

*J. A. Leathers* and *Mize & Mize,* for appellant.

*White & Ford* and *Dart, Kernan & Dart,* for appellee.

STEVENS, J., delivered the opinion of the court.

Appellant, a Mississippi corporation had constructed and is the owner of a certain wooden barge ''Bert.'' This barge was constructed at Gulfport, Miss., in 1916, and on August 2, 1916, appellee, the Fireman's Fund Insurance Company, a foreign corporation of San Franciso, Cal., executed a time policy of marine insurance whereby it undertook to insure the said Gulf Transportation Company for a period of one year, and in the sum of thirty-five thousand dollars, against any loss or damage to said barge caused by the perils of the sea as named and set forth in the written contract. The perils, accidents or contingencies insured against are set forth in the following clause:

''Touching the adventures and perils which the said insurance company is contented to bear and take upon itself in this voyage, they are of the seas, fire, barratry of the master (unless the insured be an owner of the vessel), and of the mariners and all other losses and misfortunes which have or shall come to the damage of the said property or any part thereof, to which insurers are liable by the rules and customs of insurance in Boston, subject to the provisions or conditions referred to by clauses in this policy.''

The barge was constructed for the transportation of oil, and soon after it was constructed and the policy of insurance written, it was towed from Gulfport to Tampico, Mex., where it was used in carrying oil from Tampico to Lobos Island, making several trips. In February, 1917, it started upon a voyage from Tampico to New Orleans, La., in tow of a tug. On this voyage it encountered a storm which badly water-logged and

otherwise damaged the barge to such an extent that it was compelled to put into the port of Galveston for repairs.   Thereupon appellee company appointed one T. J. Anderson, a ship surveyor, to make a survey and report to the insurance company.   Mr. A. E. Fant appears to be the principal owner, the active agent, and dominant influence in appellant company.   Mr. Fant went to Galveston to look after the interest of his company and there received from Anderson, the surveyor, recommendations as to what should be done to repair the damage to the barge.   Without referring to immaterial conflicts in the testimony, it may be said generally that these negotiations between Fant and Anderson led to the preparation by Mr. Anderson of plans and specifications for the necessary repairs, and that, based upon these specifications, Fant, acting for the Gulf Transportation Company, contracted with one Weaver to repair or rebuild the barge in accordance with Anderson's specifications.   In the course of the work, Fant made payment to Weaver on the contract in accordance with the O. K. or recommendation of Mr. Anderson.   The total expense of these repairs appears to have been twenty thousand, five hundred four dollars, and fifty-four cents, and under the terms of the policy appellant claimed and recovered sixteen thousand, nine hundred, sixty-four dollars and twenty-one cents as the amount for which the Insurance Company was chargeable.   Weaver completed his contract, and thereupon Anderson, at Mr. Fant's request, gave a certificate of seaworthiness, upon which Frank B. Hall & Company, the New York agents of appellee company, reinstated the policy for the full amount of thirty-five thousand dollars; the additional premium to be paid when appellee settled for the loss incurred as above stated Mr. Fant thereupon leased the barge, as repaired, to Charles Clark & Co., which company had the barge towed up Houston Ship Channel to Lynchburg, Tex., where she was loaded

with oil and proceeded on a voyage down Houston Ship Channel to Port Arthur, Tex. After going a short distance, about thirty minutes after she started, and while in smooth and placid waters, she gradually began to settle, the oil began to seep out of the barge and make its appearance in the wake of the barge, and to prevent further sinking the captain "shoved her out of the channel in shallow water and anchored the barge and then proceeded to Galveston light to report." The captain left the barge anchored over night and, returning the next morning, states: "She was resting on the bottom in about twelve feet of water." That he thereupon "pumped water out of her and she floated, and we got back in the channel and carried her back to Lynchburg."

The parties failed to adjust or agree upon the loss or amount properly chargeable under the terms of the policy, whereupon the Gulf Transportation Company instituted · a suit on the policy in the circuit court of Harrison county for the recovery, first, of the sum of sixteen thousand, nine hundred, sixty-four dollars, and twenty-one cents under the first loss; and for the sum of thirty-five thousand dollars, alleged total loss for accident in Houston Ship Channel. It was the contention of the plaintiff that the barge opened up, became hogged, and so badly went to pieces in Houston Ship Channel that she is no longer fit for the purpose for which she was constructed, and that inasmuch as, under certain estimates obtained by appellant, it would require at least forty thousand dollars to make the barge seaworthy, she is now a total loss. The barge at the time this suit was instituted, and at the time it was tried in the lower court, was anchored at Galveston, and a photograph of the barge as she lies at anchor is made a part of the record. Because the case was tried in the circuit court, appellee filed its bill in the chancery court of Harrison county to enjoin the prosecution of

the suit at law, and seeking to transfer the issues to a court of equity for reasons unnecessary here to set out. To this bill appellant, as plaintiff in the action at law, filed an answer and cross-bill and consented to equity jurisdiction. The pleadings were thereupon drawn in accordance with the practice in chancery, and the cause submitted to the chancellor upon the pleadings and proof, and a decree rendered awarding to appellant the full amount of sixteen thousand, nine hundred, sixty-four dollars, and twenty-one cents, together with interest thereon, as the appropriate amount of loss incurred as a result of the storm and as a consequence of the repairs made by Weaver, but denied any recovery on account of the alleged second disaster in the Houston Ship Channel. Appellant company was satisfied with the recovery awarded for the first loss and elects to accept the amount found to be due for the first disaster, but prosecutes its appeal from that portion of the decree denying the claim of thirty-five thousand dollars, on the policy as restored for the loss alleged .to have been sustained in the Houston Ship Channel. The only issue presented by this appeal, therefore, is the question whether or not appellant is entitled to recover damages claimed to have been sustained on the last voyage.

On the question of liability two main contentions are made by counsel for appellant: First, that the repairs at Galveston were under the direct supervision of T. J. Anderson a surveyor for the insurance company; that Anderson as a surveyor for appellee company issued a certificate of seaworthiness; that acting upon this certificate of seaworthiness, the insurance company restored the policy for the full amount, and the barge started upon the journey which resulted in disaster; and that the insurance company is accordingly estopped from pleading or successfully maintaining that the barge was not seaworthy. Second,

that the gradual settling or threatened sinking of the barge, which the captain prevented by anchoring in shallow water, was a peril of the sea contemplated and covered by the terms of the policy. Much is said in the bill of complaint and the cross-bill as to the authority of Mr. Anderson, the surveyor, and the alleged fraud of Mr. Fant in procuring the certificate of seaworthiness from Anderson; but the lengthy averments on these points have little or no bearing on the point discussed in this opinion. Complainant is likewise made that the barge went to pieces on July 7, 1917, and appellant did not give formal notice of abandonment until January 26, 1918. There was no cross-appeal by appellee company from that portion of the decree awarding damages for the first loss. There is an express warranty of seaworthiness, and upon this written clause of the policy appellee relies. Appellee furthermore contends that the proximate cause of the damage alleged to have been sustained on July 7, 1917, was not one or more of the perils which appellee company agreed to bear. In reference to the proximate cause of the damage there is evidence tending to show that the barge was structurally weak and not suited for the purposes for which she was built; that the new work done by Mr. Weaver, the contractor, in Galveston, gave way when the barge was loaded and started on the voyage down Houston Ship Channel, and that "she broke under the weight of her cargo;" that in Houston Ship Channel the water was smooth and placid; there was no collision, no obstructions, and no negligence on the part of the master of the crew; that the barge became hogged and water-logged as a result both of structural weakness and the fact that the repairs were not properly made; that there were not sufficient longitudinal timbers to make her strong enough for the Gulf of Mexico trade; that the longitudinal bulkheads were halved into one another, and as a consequence

thereof they do not furnish the strength that they should; and furthermore, that the contractor who originally constructed this barge has, since this accident, placed more longitudinal timbers in barges subsequently constructed under similar plans to avert an accident of the kind here complained of. We shall quote certain portions of this testimony in disposing of the one and only law point which, in our judgment, is decisive of this appeal.

Our view of the law as applied to the particular facts leads to an affirmance of the decree complained of. Aside from any other question in the case, and especially the question of estoppel so much relied upon, any loss occasioned by the last voyage in the Houston Ship Channel was not proximately caused by any of the perils insured against. Mr. Arnould, the leading authority on marine insurance, observes:

"*Causa proxima non remota spectatur is* a principle which is more rigorously applied to cases of marine insurance than to those of other liabilities."

Arnould on Marine Insurance (9th Ed.), par. 783. The loss or damages sued for is not the result of any violent action of wind or waves, a collision, or obstruction. It affirmatively appears that the barge on its last journey encountered no storm or rough weather, struck no rock or other obstacle, but on the contrary, while being towed in perfectly smooth and placid waters, and in thirty minutes after starting on the journey, broke under the weight of her own cargo. The testimony of Mr. Fant himself is conclusive on this point. He testifies that the original hogged and unfit condition of the barge was the result of the storm which he thought could be remedied "by building the bulkheads back up and down her, and putting in sheathing on the inside, 4x12 inside the frame to hold her back in her shape;" that this, he thought, would make her strong enough to go to sea. But continuing he says:

"That would hold her when she was light; but after putting in a cargo these 4x12's were so strained that they gave way, I suppose, and, the fastenings being already once worked she hogged again with the first cargo."

Capt. Larche, the United States Inspector of Hulls, among other things, says:

"Since she went down the second time, I concluded that a great many of the fastenings had been broken and the new fastenings would not hold and she broke under the weight of her cargo."

Mr. Grant, a marine surveyor employed by appellant company after this second disaster, held a regular survey of the barge, and solemnly makes a report in which he certifies:

"After careful examination of the barge, I am of the opinion she is structurally weak and not suited for the purposes she was constructed for. . . . It was further ascertained that the longitudinal bulkheads were halved into one another. This method of construction practically takes all the strength out of the longitudinal bulkheads."

Mr. Walmsley, appellant's witness, says:

"The port stern was broken or damaged to such an extent that it is lower than the starboard side, and that condition would show the barge is not staunch and strong enough for carrying bulk cargo. It might be termed hogged, but I call it broken. Hogged in the barge would mean a bend about amidship whether up or down, but being on the corners I would call it broken. The weight of the oil caused this. Her condition shows that the barge was not staunch and strong enough for the purpose of carrying oil, . . . and that condition existed before the oil was loaded in the barge."

Both witnesses Haden and Collin testified as to structural weakness and lack of sufficient longitudinal timbers.

It is elementary that we should not reverse the chancellor on the facts unless his findings are clearly or "manifestly" wrong.    Appellant relies largely upon legal presumptions.    It contends that appellee's agent supervised the repairs at Galveston and admitted that the barge was seaworthy for the last voyage, and on that account is not only estopped from relying upon the breach of warranty pleaded in this case, but is furthermore estopped from insisting that the barge settled or began to sink as the result of unseaworthiness.    It may be conceded that in proper cases the insurance company can admit the seaworthiness of a vessel and be estopped from relying upon a promissory warranty of seaworthiness.    But, if it be granted that appellee admitted the seaworthiness of the vessel at the commencement of the voyage down Houston Ship Channel, it does not follow that appellant is thereby entitled to recover under the policy.    The loss complained of must be one within the terms of the policy.    Certainly if the vessel broke under the weight of her own cargo, without encountering any perils of the sea, there can be no recovery.    The testimony in the case justifies such a conclusion of the chancellor; and, so, any presumptions or conjectures must yield to the proof.    It is not a case where a vessel sinks without any known cause. Competent surveyors have examined the barge since the last mishap and give their testimony as experts on the real efficient cause of the accident.    Under this view, it is unnecessary to indulge in any presumptions in favor of seaworthiness, or as to the burden of proof on this point.    Aside from the usual presumptions so much discussed in the briefs, there was no extraordinary circumstances of weather, wind, rocks, sand or any other fortuitous event which contributed in whole or in part to the loss complained of. It is not a case of stranding, and therefore a loss under the policy.

Counsel for appellant cite Arnould on Marine Insurance (9th Ed.), par. 694, to the point that, if the ship starts seaworthy the underwriters are precluded of any defense based upon any alleged unseaworthy condition. The author is there discussing cases in which the underwriters on the face of the policy ''allowed the vessel to be seaworthy for the voyage,'' and the effect of such a provision on a loss ''caused remotely by the ship having become unseaworthy, but proximately by a peril insured against.'' Counsel have cited no case which does not require the loss to be ''proximately caused'' by one of the perils insured against. Surely the contract must govern the rights and obligations of the parties, and, as stated by counsel for appellee, ''an insurance policy is not a promissory note.'' It is certainly not our purpose to define the term ''perils of the sea,'' or to indicate all the losses comprehended by a policy of marine insurance. Our duty in the case at bar is to determine whether the misfortune is an extraordinary of fortuitous accident against which indemnity is given, or an ordinary event which is not contemplated by the policy. Mr. Arnould, in paragraph 812, quotes from Lord Herschell as follows:

''There must be some casualty, something which could not be foreseen as one of the necessary incidents of the adventure. The purpose of the policy is to secure an indemnity against accidents which may happen, not against events which must happen.''

And, further:

''Rule 7 of the Rules for Construction of Policy in the First Schedule of the Marine Insurance Act, 1906, declares that 'the term ''perils of the seas'' refers only to fortuitous accidents or casualties of the seas. It does not include the ordinary action of the winds and waves.' ''

In Amer. & Eng. Ency. of Law (2d. Ed.), vol. 19, p. 1023, it is said:

"In considering what is and what is not a peril of the sea the question is whether the loss arose from injury from without or from weakness within."

In the case of *Sassoon & Co.* v. *Western Assurance Co.* (England) reported in Ann. Cas. 1912D, p. 1037, is appears that the leak through which sea water percolated was wholly due to the rotten hulk. Lord MERSEY observes:

"There was no weather, nor any other fortuitous circumstance, contributing to the incursion of the water; the water merely gravitated by its own weight through the opening in the decayed wood and so damaged the opium. It would be an abuse of language to describe this as a loss due to perils of the sea."

The contention that the underwriters are estopped to deny that the barge was seaworthy presents a more debatable question, and one which, under our view of the vital and controlling issue, it is unnecessary to decide. In the opinion of the writer there is much difficulty in the way of applying the doctrine of estoppel in this case. It is in evidence that not only Anderson but that Capt. Larche approved the original specifications for the repairs, and that both Anderson and Fant believed the barge would be seaworthy when the contractor, Weaver, had done the work in accordance with these specifications. It affirmatively appears that both parties to the contract thought the barge would be seaworthy, and therefore it is not a case where the underwriters, with knowledge of the unseaworthy condition of the vessel, nevertheless admit that the vessel is seaworthy. How can appellee company waive a condition which it did not know to exist? Mr. Arnould, in paragraph 688, observes:

"Whether the assured were ignorant of the unseaworthiness of the ship or not also makes no difference; if the ship was not, in fact, seaworthy at the outset of the adventure, either in the degree commensurate with

her then risk, or for the voyage, as the case may be, that state of things never existed which was the foundation for the underwriter's promise, and he subsequently can never be bound thereby."

But, as stated, it is unnecessary to decide whether there was a breach of the warranty in this case. It is significant that the very contractor who did the work was not used as a witness by either party, and there is evidence which tends to show that the repairs which Mr. Weaver did were not sufficiently substantial, and that the money paid to Weaver is a clear loss. This, under the issues, is appellant's misfortune.

On the law and the facts the decree of the learned chancellor must be affirmed.

*Affirmed.*