724 F.2d 369
 COMPAGNIE DES BAUXITES DE GUINEE, a corporation, Appellant,
v.
INSURANCE COMPANY OF NORTH AMERICA, the Insurance
Corporation of Ireland, Ltd., Mercantile & General
Reinsurance Co., Ltd.,* Eagle Star Insurance
Co., Ltd., Hanover Insurance Company, Continental Assurance
Company of London, Ltd., the Century Insurance Co., Ltd.,
Yuval, the Insurance Company of Israel, Ltd., Home Insurance
Co., Ltd., Slater, Walker Insurance Co., Ltd., Yasuda Fire &
Marine Insurance Company (UK) Ltd., Nichido Fire & Marine
Insurance Co., Ltd., Turegum Insurance Company, Sahar
Insurance Co., Ltd., Excess Insurance Co., Ltd., Trident
Insurance Co., Ltd., Vesta (UK) Ltd.,*
Chiyoda Fire & Marine Insurance, Ltd., Tokyo,
* Stronghold Insurance Co., Ltd., British
Reserve Insurance Co., English & American Insurance Co.,
Ltd., Consolidated European Reinsurance Co., Ltd., and
L'Union Atlantique S.A. D'Assurances, Brussels,
* all being corporations.
 No. 83-5060.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 12, 1983.
Decided Dec. 22, 1983.
 
 Cloyd R. Mellott (argued), Dale Hershey, Robert W. Doty, Andrew M. Roman, Louis J. Moraytis, Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for appellant.
 Randall J. McConnell, Jr. (argued), Stephen R. Mlinac, Dickie, McCamey & Chilcote, P.C., Pittsburgh, Pa., for appellee, Ins. Co. of North America.
 Thomas F. Weis (argued), David L. Beck, Weis & Weis, Pittsburgh, Pa., for appellees, excess insurers.
 Before SEITZ, Chief Judge, and GIBBONS and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Chief Judge.
 
 
 1
 Compagnie des Bauxites de Guinee (CBG) is appealing an order of the district court granting summary judgment to the Insurance Company of North America (INA) and a number of foreign excess insurers (the excess insurers), in CBG's action to recover on its business interruption insurance policies. This is a diversity action in which the district court, following a hearing, determined that Pennsylvania law was controlling, a ruling not challenged on appeal. The Court of Appeals has jurisdiction under 28 U.S.C. Sec. 1291.
 
 
 2
 * This appeal involves one of several suits filed by CBG against its insurers to recover for business interruption losses arising from various casualties at its bauxite mining and processing facility in the Republic of Guinea. A more complete statement of the facts as well as some of the history of this case can be found in our opinion in Compagnie des Bauxites de Guinee v. Insurance Company of North America, 651 F.2d 877 (3d Cir.1981), aff'd sub nom. Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982).
 
 
 3
 CBG holds all-risk business interruption insurance policies, with a $10 million primary layer carried by INA and a $10 million excess layer carried, in varying percentages, by the excess insurers.[1] At issue is whether CBG may recover from its insurers for the business interruption caused by the structural failure of its tippler building and crusherhouse. This facility raises freight cars loaded with bauxite ore and empties their contents into a feed hopper. Machinery within the structure separates chunks of ore too large to ship and transports them to hammermills where they are crushed to a consistency suitable for shipment. At some time in 1974, not long after the plant became operational, CBG became aware of serious damage to the concrete structural members of the tippler/crusherhouse, as well as to the feeders onto which the ore cars are emptied. CBG alleges that it suffered a protracted and costly business interruption during the time needed to rebuild and reinforce the structure and machinery.
 
 
 4
 The cause of the damage was the subject of much investigation and discovery. An early report by an adjuster for the insurer of the structure itself concluded that the damage was caused by blocks of bauxite much larger than anticipated being fed into the machinery. CBG claims that only after the damage occurred did it learn that the engineers for the conveyor system had not followed CBG's specifications. The machinery had been designed to accommodate the weight of crushed bauxite, 84 lbs/cubic foot, rather than the weight of bauxite blocks, 159 lbs/cubic foot. It was also discovered that the structural engineers for the building and supports used an incorrect equation to compute the severe stresses to which the structure would be subjected.
 
 
 5
 INA and the excess insurers separately filed motions for summary judgment based on several grounds. First, they argued that the design defects in the equipment and structure meant that the structural failure and ensuing business interruption was inevitable rather than fortuitous, and that as a matter of law CBG could not recover for losses not caused by a fortuitous event. Second, they alleged that CBG did not file timely notice of loss as required by the terms of the insurance policy, and that they suffered prejudice from this delay. Third, they alleged that CBG did not file suit within 12 months of the date of the loss, also as required by the policy.
 
 
 6
 The district judge ruled that factual disputes precluded entry of summary judgment based on the latter two grounds, but he granted summary judgment based on the first ground. He held that insurance covers only risks, not certainties, so that a loss must be caused by a fortuitous event in order to be covered. He then held that the design defects made the failure of the tippler/crusherhouse inevitable, and thus that no fortuitous loss had occurred. He further held that regardless of the terms of the insurance contract or the knowledge of the parties at the time it is made, it would be contrary to public policy to cover losses not caused by a fortuitous event. Compagnie des Bauxites de Guinee v. Insurance Company of North America, 554 F.Supp. 1080 (W.D.Pa.1983).
 
 II
 
 7
 We need not address the public policy rationale if we determine that CBG's loss was fortuitous, and so we proceed directly to that issue. There appears to be no decision by any Pennsylvania court defining a fortuitous event. Thus, the duty of the district judge under the Erie doctrine was to predict what definition of a fortuitous event the Pennsylvania Supreme Court would apply if this case were before it. Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co., 652 F.2d 1165, 1167 (3d Cir.1981). The district judge made his prediction of Pennsylvania law based on cases from other jurisdictions and treatises on insurance law, although he characterized his holding as one of general insurance law rather than a prediction of Pennsylvania law. We must first determine what standard of review we should apply to the district court's holding.
 
 
 8
 We believe that we should review the district judge's prediction as a determination of law, as to which our review is plenary, rather than as a finding of fact reviewed by the clearly erroneous standard of Fed.R.Civ.P. 52. Another panel of this court recently used this standard to review a district judge's construction of a state statute not yet construed by the Pennsylvania Supreme Court. Connecticut Mutual Life Insurance Co. v. Wyman, 718 F.2d 63, 65 (3d Cir.1983). Although our review is plenary, this does not mean that in discharging our function we will not take into consideration the district judge's prediction of the law of the state in which he sits.
 
 
 9
 Using a plenary standard of review is appropriate because the district judge in a diversity case is determining the law of the forum. The district judge's holding is only a prediction of what law the state's highest court would adopt, rather than an actual holding of state law that a state judge could give. There is nothing in this difference, however, that affects our standard of review. By predicting what law the state would adopt, the district judge announces the law which controls the case before him. We believe that this determination of law, like any other determination of law binding the parties to the case, should be reviewed by a plenary standard. Cf. Bernhardt v. Polygraphic Co., 350 U.S. 198, 209, 76 S.Ct. 273, 279, 100 L.Ed. 199 (1955) (Frankfurter, J., concurring).
 
 
 10
 Having determined the appropriate standard of review, it remains to decide whether the district court erred as a matter of law in holding that a loss arising from an unknown design defect is not caused by a fortuitous event. We hold that the district court did err, because we believe that the definition of a fortuitous event that Pennsylvania would adopt is that found in the Restatement of Contracts:
 
 
 11
 A fortuitous event ... is an event which so far as the parties to the contract are aware, is dependent on chance. It may be beyond the power of any human being to bring the event to pass; it may be within the control of third persons; it may even be a past event, such as the loss of a vessel, provided that the fact is unknown to the parties.
 
 
 12
 Restatement of Contracts Sec. 291 comment a (1932) (emphasis added).[2]
 
 
 13
 We believe for several reasons that Pennsylvania would adopt this definition of a fortuitous event. The illustrations accompanying this definition make it clear that it applies to insurance policies, and a number of courts have so applied it. See, e.g., Morrison Grain Co., Inc. v. Utica Mutual Insurance Co., 632 F.2d 424, 430 (5th Cir.1980); Texas Eastern Transmission Corp. v. Marine Office--Appleton & Cox Corp., 579 F.2d 561, 564 (10th Cir.1978); Essex House v. St. Paul Fire & Marine Insurance Co., 404 F.Supp. 978, 989 (S.D.Ohio 1975); Mattis v. State Farm Fire & Casualty Co., 118 Ill.App.3d 612 at 622, 73 Ill.Dec. 907 at 914, 454 N.E.2d 1156 at 1163 (1983); Employers Casualty Co. v. Holm, 393 S.W.2d 363, 368 (Tex.Civ.App.1965). While we know of no Pennsylvania case which has considered the Restatement definition, we have already applied it to an insurance policy in a case controlled by Pennsylvania law. Panizzi v. State Farm Mutual Auto Insurance Co., 386 F.2d 600 (3d Cir.1967). Furthermore, the parties as well as the district court agree that "accident" is a synonym for "fortuitous event," and the Restatement definition of a fortuitous event is consistent with Pennsylvania's definition of an accident, which emphasizes its unplanned and unintentional nature. See Kraftsow v. Brown, 172 Pa.Super. 581, 94 A.2d 183, 185 (1953). Damage resulting from an unknown design defect is obviously unplanned and unintentional.
 
 
 14
 We also disagree with the district court's definition of fortuitousness because the court determined what was "certain" based on knowledge gained through hindsight. Since we are reviewing a summary judgment for the insurers, we must credit CBG's statements that it had no knowledge of the design defects. We think it inappropriate to cause the insured to suffer a forfeiture by concluding, with the aid of hindsight, that no fortuitous loss occurred, when at the time the insurance took effect only a risk was involved as far as the parties were aware. See Millers Mutual Fire Insurance Co. v. Murrell, 362 S.W.2d 868, 870 (Tex.Civ.App.1962), writ ref. n.r.e.:
 
 
 15
 It is true that all the expert witnesses, who, after the damage, examined the underlying structures of the earth, noted the capacity of the soil to absorb water and saw evidences of earth movement, said that damage similar to that which occurred was inevitable. We are not told who, at the time the insurance contract was executed, had certain knowledge that this damage was inevitable. We perceive no error in the court's refusal to hold ... that the peril was not a risk but a certainty that could not be insured against.
 
 
 16
 See also Essex House, 404 F.Supp. at 990; Holm, 393 S.W.2d at 367.
 
 
 17
 INA and the excess insurers cite numerous cases for the proposition that a loss caused by a design defect is an uninsurable certainty. None of these cases they cite address the Restatement definition of a fortuitous event, much less consider and reject it. Many of the cases cited by insurers' counsel merely mention fortuitousness without any helpful analysis of the meaning of the requirement. See, e.g., C.H. Leavell & Co. v. Fireman's Fund Insurance Co., 372 F.2d 784 (9th Cir.1967); J. Ray McDermott & Co., Inc. v. Fidelity & Casualty Co., 466 F.Supp. 353 (E.D.La.1979). In others the finding of non-fortuitousness was based on the insured's own gross negligence or deliberate risk-taking. Aetna Insurance Co. v. Sachs, 186 F.Supp. 105 (E.D.Mo.1960); Newtown Creek Towing Co. v. Aetna Insurance Co., 163 N.Y. 114, 57 N.E. 302 (1900).
 
 
 18
 The insurers rely heavily on Greene v. Cheetham, 293 F.2d 933 (2d Cir.1961), which involved an insured's attempt to recover for a shipment of frozen catfish which was condemned as unfit for human consumption. The court stated that contaminated fish would inevitably be condemned, so that the insurance policy had to be construed to exclude coverage if contaminated fish were shipped. Id. at 937. The court, however, was not stating as a legal principle that coverage could not attach. Instead, the court was construing the policy's "inherent vice" exclusion in order to harmonize it, according to the probable intent of the parties, with the policy's coverage of "any and all risks."
 
 
 19
 The insurers also rely on language in two pre-Restatement cases. A passage in Gulf Transportation Co. v. Fireman's Fund Insurance Co., 121 Miss. 655, 83 So. 730 (1920), states in dictum that coverage does not apply to a loss caused by a design defect even if it is unknown to the parties at the time of contracting. That case expressly does not decide the issue, however, holding instead that the loss was not caused by a covered "peril of the sea." Id. 83 So. at 733. We have also determined that the Pennsylvania courts would not follow Mellon v. Federal Insurance Co., 14 F.2d 997 (S.D.N.Y.1926). In that case Judge Augustus Hand stated that insurance could only apply to a risk, not a certainty, and held that coverage would not extend to a ship's boiler that cracked from unknown causes. Judge Hand did not consider the issue of fortuitousness in terms of the knowledge of the parties. He also interpreted the coverage of the policy narrowly rather than broadly, and based his holding on this narrow construction of the policy. In contrast, a Pennsylvania court today would interpret the coverage of an all-risks policy broadly. Miller v. Boston Insurance Co., 420 Pa. 566, 218 A.2d 275 (1966).
 
 
 20
 Because we believe that the Supreme Court of Pennsylvania would hold that a loss arising from an unknown design defect is one caused by a fortuitous event, we will reverse the district court's contrary conclusion. In view of this holding we need not address the district court's ruling that public policy requires that a fortuitous event must occur. We note that our holding does not mean that the event causing CBG's loss is within the coverage of the policy, since a loss can be caused by a fortuitous event and still fall within a contractual exclusion from coverage. See Goodman v. Fireman's Fund Insurance Co., 600 F.2d 1040 (4th Cir.1979). In their answer to CBG's complaint the insurers stated defenses based on the policy exclusions for inherent vice, latent defect, wear and tear and gradual degradation. Nothing in the rule of fortuitousness which we adopt today bars the district court from addressing the possible applicability of such exclusions during the proceedings on remand.
 
 III
 
 21
 The insurers also claim that the district court's grant of summary judgment can be sustained on appeal on two alternative grounds: first, that CBG failed to provide notice of its loss as required by the policy; and second, that CBG failed to file suit within the time required by the policy, even though the district court declined to grant summary judgment on either ground, holding that both involved material facts in dispute. We believe that the district court ruled correctly. We also believe that these alternative grounds involve questions of Pennsylvania law which we would be reluctant to decide in the first instance on appeal, preferring instead to have the benefit of the district judge's rulings on these matters.
 
 
 22
 We turn first to the notice of loss issue. Paragraph 12 of the INA policy requires that CBG give "immediate written notice" of any business interruption, and file within 60 days a written proof of loss. Under Pennsylvania law, the insurer must be given notice within a reasonable time under the circumstances, regardless of the word "immediate" or similar language in the policy. Windsor Manufacturing Co. v. Globe & Rutgers Fire Insurance Co., 277 Pa. 374, 121 A. 328 (Pa.1923). The insurers dispute the reasonableness of CBG's notice.
 
 
 23
 The reasonableness of the notice given cannot be determined until it is known when CBG's duty to give notice arose. This involves disputed issues of law. First, the district court must determine whether "loss" refers to the inception of the business interruption or to the casualty from which it ensued. As to the excess insurers, who are liable for business interruption loss in excess of $10 million, the district court will have to determine whether the duty to notify arose immediately, or only when the loss became great enough to involve the excess insurers. Compare Gerrard Realty Corp. v. American States Insurance Co., 89 Wis.2d 130, 277 N.W.2d 863 (1979) with Greyhound Corp. v. Excess Insurance Co. of America, 233 F.2d 630 (5th Cir.1956).
 
 
 24
 Probably the most important question not resolved is whether the insurers need to show that they were prejudiced by any late notice from CBG. In Brakeman v. Potomac Insurance Co., 472 Pa. 66, 371 A.2d 193 (Pa.1977), the Pennsylvania Supreme Court held that a showing of prejudice would be required before failure to comply with a notice provision would absolve an insurer of liability. The court so held because such provisions are usually dictated by the insurer and because absent actual prejudice, the insurer should not be permitted to rely on the clause to work a forfeiture against the insured. It must be determined whether the Brakeman rule applies to the INA and the excess insurance policies. If so, it must be determined that the insurers have met their burden of showing prejudice before they can avoid liability to CBG on the ground of late notice.
 
 
 25
 We also agree with the district court that disputed issues of material fact prevent entry of summary judgment on the ground that CBG failed to file this action within the time stated in the policy. These same disputed issues of fact, as well as unanswered questions of law, prevent us from upholding summary judgment for the insurers on this ground. We have discussed at some length the factual and legal questions which prevent entry of summary judgment on the ground of late filing in our opinion in Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances, 723 F.2d 357, also filed today. Rather than repeat that discussion, we incorporate it by reference here.
 
 IV
 
 26
 Because we have determined that the district court erred when it granted summary judgment to the insurers on the ground that a fortuitous event had not occurred, and that no alternative ground exists for sustaining summary judgment, at least at this stage, we will reverse the judgment of the district court and remand this case for further proceedings consistent with this opinion.[3]
 
 
 
 *
 The appellees marked with an asterisk (*) have been dismissed from this case by orders entered by the District Court on October 26, 1976 and August 19, 1982
 
 
 [1]
 Three other excess insurers were dismissed from this case in a prior appeal because CBG had not demonstrated that they were amenable to suit in Pennsylvania. Compagnie des Bauxites de Guinee v. Insurance Company of North America, 651 F.2d 877 (3d Cir.1981), cert. denied sub nom. Compagnie des Bauxites de Guinee v. Insurance Corp. of Ireland, Ltd., 457 U.S. 1105, 102 S.Ct. 2902, 73 L.Ed.2d 1312 (1982). CBG filed a new action against these three insurers, alleging the same cause of action and claiming that new contacts with Pennsylvania gave the district court in personam jurisdiction. The district court dismissed, holding that our prior decision was res judicata as to jurisdiction. Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances, 555 F.Supp. 1027 (W.D.Pa.1983). In our opinion in CBG's appeal from that decision, also filed today, we have held that the prior appeal was not res judicata and have remanded to enable CBG to take discovery on the three excess insurers' contacts with Pennsylvania
 
 
 [2]
 Section 291 of the first Restatement notes that an aleatory promise is one based on a fortuitous event, and defines an aleatory promise indirectly by defining a fortuitous event. This provision was substantially carried over into the second Restatement. Like the first, the second Restatement provides that an aleatory promise is one based on a fortuitous event. Restatement of Contracts, Second, Sec. 76 comment c. Language almost identical to the passage quoted in the text is used as the definition of an aleatory promise. Id. Sec. 379 comment c. Thus the difference between the first and second Restatements is that the latter defines an aleatory promise directly, rather than indirectly by defining a fortuitous event. The second Restatement also notes that an insurance policy is a typical aleatory promise. Id
 
 
 [3]
 CBG requests that, should we return this case to the district court for further proceedings, in the exercise of our supervisory power we direct that those proceedings be before a different judge because it alleges that the district judge demonstrated a lack of impartiality. We are not satisfied that the requested exercise of our supervisory authority is required to ensure impartiality in the proceedings on remand