PETERS TOWNSHIP SCHOOL DISTRICT, Appellant,

v.

The HARTFORD ACCIDENT AND INDEMNITY COMPANY.

No. 86–3771.

United States Court of Appeals, Third Circuit.

Argued June 16, 1987.

Decided Nov. 13, 1987.

As Amended Dec. 11, 1987.

Rehearing and Rehearing En Banc Denied Dec. 15, 1987.

Reed B. Day (Argued), John C. Brzustowicz, Peacock, Keller, Yohe, Day & Ecker, Washington, Pa., for appellant.

Richard W. DiBella (Argued), Fredric E. Orlansky, Jones, Gregg, Creehan & Gerace, Pittsburgh, Pa., for appellee.

Before SEITZ and MANSMANN, Circuit Judges and DEBEVOISE, District Judge.[*]

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this diversity case we are called upon to determine the scope of an exclusionary "earth movement" clause in an "all risk" insurance policy under Pennsylvania law. We conclude that the district court was correct in holding that the exclusion at issue would bar coverage for damage to the school buildings brought about by spontaneous, natural events but not for earth movement brought about by manmade causes such as mine subsidence, the acknowledged cause of the damage to the Middle School.

We further find, however, that the district court erred as a matter of law in finding that the mine area beneath the two schools returned to "the keeping of nature" and thus the damage was caused by a natural phenomenon. We will, therefore, reverse the grant of summary judgment in favor of the insurer and will remand with instructions for the district court to enter partial summary judgment for the school district with respect to the defense of the "earth movement" exclusion in regard to the Middle School. We will vacate the judgment with respect to Elm Grove School, about which a genuine issue regarding causation exists.

### I.

Peters Township School District ("the School District") purchased insurance for all its properties from The Hartford Accident and Indemnity Company ("Hartford"). The policy contained the following language of exclusion, which became the crux of this dispute:

This policy does not insure under this form against:

\*    \*    \*    \*    \*    \*

D) Loss caused by, resulting from, contributed to or aggravated by any of the following:

1. earth movement, including but not limited to earthquake, landslide, mudflow, earth sinking, earth rising or shifting.

The School District's McMurray Middle School was built over a portion of a coal mine known as Montour No. 4, which is owned and operated by Consolidation Coal Company. In May, 1984, the School District first noticed cracks in the school building which was subsequently closed for student occupancy. The parties agreed that the damage was caused by mine subsidence, or the earth under the school moving in a downward sinking and shifting fashion into the mine voids.

The District's Elm Grove School was also built above the Montour No. 4 mine, and damage to that school occurred in January, 1985. The cause of the damage at the Elm Grove School is disputed.

The School District filed damage claims with Hartford, which were rejected based upon the contention that mine subsidence was an excluded loss under the exclusion

[*] Honorable Dickinson R. Debevoise of the United States District Court for the District of New Jersey, sitting by designation.

noted above. The School District then brought suit in the Court of Common Pleas of Washington County, Pennsylvania. Hartford removed the case to the United States District Court for the Western District of Pennsylvania.

The School District subsequently filed a motion for partial summary judgment on the issue of Hartford's liability and for a separate trial on the issue of damages, pursuant to Fed.R.Civ.P. 42(b). Hartford filed its own motion for summary judgment on the ground of no liability under the policy in regard to either the Middle School or the Elm Grove School. In response to the School District's motion, Hartford contended that an issue of fact existed in regard to the cause of the damage to the Elm Grove School. The district court acknowledged that both parties conceded that the damage to the Middle School was caused by mine subsidence. The court then granted Hartford's motion by finding no liability under the policy, thus foreclosing the issue of the cause of damage to the Elm Grove School, 643 F.Supp. 518. The School District's later motion for reconsideration pursuant to Fed.R.Civ.P. 59 was denied and this appeal followed.

## II.

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

On review of a grant of summary judgment, an appellate court is required to apply the same test the district court should have utilized initially. Inferences to be drawn from the underlying facts contained in the evidential sources must be viewed in the light most favorable to the party opposing the motion. *Goodman v. Mead Johnson & Co.*, 534 F. 566 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50

L.Ed.2d 748 (1977). The material facts in this controversy are undisputed.[1] Determination of the proper coverage of an insurance contract when the underlying facts are not in dispute is a question of law. *Pacific Indemnity Co. v. Linn*, 766 F.2d 754 (3d Cir.1985).

The United States Supreme Court has recently elucidated the varying burdens upon the parties in the context of motions for summary judgment. In *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986), the Court established that Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Moreover, there is no requirement that the moving party support its motion with affidavits negating the opponent's claim. The burden on the moving party is to show that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 106 S.Ct. at 2553. On cross-motions for summary judgment the same burdens would apply.

The Supreme Court explained the materiality requirement for summary judgment in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There, the Court held that the materiality determination rests on the substantive law. It is the substantive law's identification of which facts are critical and which irrelevant that governs. The judge, basing his decision on these principles, must then make the threshold inquiry of determining whether there are any factual disputes which could reasonably be resolved in favor of either party. *Anderson*, 106 S.Ct. 2510–2511. Thus, under the circumstances of this case, we must evaluate the motion for summary judgment using the substantive law of insurance contracts in Pennsylvania to inform our inquiry.

---

**1.** We realize that the parties differ concerning the cause of damage to the Elm Grove School. Since the main issue regards application of the policy when mine subsidence is the cause of damage, we will address that chiefly.

■ We note as well that in regard to the Rule 59 motion for reconsideration, an order denying a motion for a new trial is not appealable as such. *See Greenwood v. Greenwood,* 224 F.2d 318 (3d Cir.1955). Rather, we consider on appeal the final judgment in the case and the order denying the new trial is reviewable at that time.

### III.

The School District's primary argument is that the district court erred in granting summary judgment for Hartford because the court's dispositive finding—that the subsidence was a natural phenomenon because the mine had returned to "the keeping of nature"—was a factual question, neither briefed nor argued, about which there was a genuine issue of material fact. The School District argues as well that partial summary judgment should have been granted in its favor because the parties agreed that mine subsidence caused the damage to the Middle School.

Hartford counters by asserting that the last date of mining in the portion of the Montour No. 4 mine which was located under the Middle School was the 1930's, and in any event that the mines were worked out in the 1940's, thus returning the mines to a natural condition. Hartford also maintains that any evidence presented to the district court in connection with the School District's motion for reconsideration was inappropriate, as those grounds were not brought to the court's attention in the original proceeding, nor presented in a timely fashion.

The district court accepted the view that " 'earth movement' in the policy ... involved in the case at bar means spontaneous, natural, catastrophic earth movement; and not movements brought about by other causes...." The court concluded that the exclusionary language of the policy was intended to remove from coverage property damage occurring from such natural causes as earthquakes, landslides and mudflows. The court explained though that while the law supported the School District's view of the case, the facts fell short

of proving the School District's right to recover.

The court held that "[w]hile we construe the earth movement exclusion as embracing only 'natural' causes, and *not other operative causes such as excavation,* we can not follow plaintiff's interpretation that all 'things done long ago' by human intervention are 'man made' activities which preclude the applicability of the exclusion." (Emphasis supplied.) The court concluded that the human activity of coal mining under the schools ceased fifty years ago and that, therefore, a stable *status quo* came into being after the mines were abandoned which rendered the subsidence natural, through spontaneous processes of deterioration and decay. Only natural forces remained operative to effect the subsidence which caused the damage. The district court included the Elm Grove School in its assessment as the insurer's motion for summary judgment alleged that both schools were damaged either by mine subsidence or natural causes, both allegedly excluded from policy coverage.

■ We begin our review by noting that earth movement exclusions in insurance policies generally refer to and have historically related to catastrophic and extraordinary calamities such as earthquakes and landslides. This was explained most fully in *Wyatt v. Northwestern Mutual Insurance Co.,* 304 F.Supp. 781, 782–783, (D.Minn.1969):

> ... the reason for the insertion of the exclusionary clause ... in all risk insurance policies is to relieve the insurer from occasional major disasters which are almost impossible to predict and thus to insure against. There are earthquakes or floods which cause a major catastrophe and wreak damage to everyone in a large area rather than on individual policyholder. When such happens, the very basis upon which insurance companies operate is said to be destroyed. When damage is so widespread no longer can insurance companies spread the risk and offset a few or the average percentage of losses by many premiums.

The thrust of this argument is that:

> ... the exclusionary language ... was designed and intended to exclude from

coverage damage from natural causes and natural phenomena; *i.e.*, earthquake, landslides, mudflow and other similar occurrences but where the proximate and efficient cause of damage definitely is the action of a third party, this exclusion does not apply even though the actions of such third-party may incidentally have caused some 'earth movement.' *Id.*

We conclude, as did the district court and the court in *Wyatt*, that the earth movement exclusion in the policy was meant to deny coverage for spontaneous, natural, catastrophic earth movement, and not movements brought about by other causes.

We cannot accept, however, the district court's view that as a matter of law the cessation of mining activity fifty years previous to the damage rendered the subsidence a natural, spontaneous event. The School District, in its motion for reconsideration, and again on appeal, has attempted to create an issue of fact concerning the cessation or continuation of mining activity underneath the schools.[2] While these matters are properly before us because they were considered by the district court, the issue of when the mining ceased is irrelevant. Mine subsidence is the lowering of the strata overlying a coal-mine, including the land surface, caused by the extraction of underground coal. *See Keystone Bituminous Coal Association v. DeBenedictis*, — U.S. —, 107 S.Ct. 1232, 1236, 94 L.Ed.2d 472 (1987). Such a definition cannot be compromised by the passage of time, and leads us inexorably to the conclusion that the earth movement exclusion at issue here does not apply to damage caused by mine subsidence. As this case is governed by Pennsylvania law, we look to that forum's pronouncements for guidance. We perceive two sources of Pennsylvania law which inform and support our analysis.

It has long been established that Pennsylvania recognizes three distinct estates in land: the mineral estate, the surface estate and the support estate. Thus one person may own the coal, another the surface, a third the right of support. *Charnetski v.*

*Miners Mills Coal Mining Co.*, 270 Pa. 459, 113 A. 683 (1921). The owner of the mineral estate owes a servitude of sufficient support to the superincumbent estate. *Graff Furnace Company v. Scranton Coal Company*, 244 Pa. 592, 91 A. 508 (1914). As the Supreme Court of Pennsylvania noted in *Penman v. Jones*, 256 Pa. 416, 100 A. 1043 (1917):

> The law is firmly established in Pennsylvania that, in the absence of express waiver or the use of words from which the intention to waive clearly appears, the grantee of minerals takes the estate subject to the burden of surface support. Thus in *Jones v. Wagner*, 66 Pa. 429, it is said, following the English rule 'where there is no restriction or contract to the contrary, the subterranean or mining property is subservient to the surface to the extent of sufficient supports to sustain the latter....' "

We find no indication that the right to support terminates with the cessation of mining activity. In fact, such a determination would seem to be contrary to the essence of over one hundred years of mining law development in Pennsylvania. While this right may be waived, the release must be by express words or necessary implication. *Penman v. Jones*, 256 Pa. at 424, 100 A. 1043.

We find our second source in Pennsylvania's Bituminous Mine Subsidence and Land Conservation Act, 52 P.S. § 1406.1 *et seq.* This Act enunciates several clear goals and policies of the Pennsylvania legislature. The Act declares it a legislative finding that mine subsidence presents a serious impediment to land development as well as a danger to the health and welfare of the people of Pennsylvania. 52 P.S. § 1406.3. Further, the Act declares it a policy of the Commonwealth to prevent damage from mine subsidence and to harmonize the protection of surface structures and the land supporting them with the continued growth and development of the bituminous coal industry in the Commonwealth. The Act then establishes, *inter*

---

2. The School District presented evidence concerning the operation of Montour No. 4 mine

until as late as 1980, and of a subterranean flood into that mine during the same year.

*alia,* a duty to prevent subsidence of certain structures protected by the Act.

We further note that the Commonwealth has also created a Subsidence Insurance Fund, 52 P.S. § 3201 *et seq.* Among the purposes for the creation of the fund is the following statement:

> Whereas, studies reveal that the subsidence is traceable primarily to mining of *thirty or more years ago* and not necessarily to present day mining so that effective measures cannot readily be taken at this late date for the elimination of the problem. (Emphasis added.)

We conclude from this review of Pennsylvania law that the dangers of potential mine subsidence are well recognized in the Commonwealth. The Pennsylvania Department of Environmental Resources regulation, § 89.146(b)(2), that coal be left in the ground for support of the surface, for example, indicates that the problem is caused by man, and can be at least partially alleviated by man. Moreover, the reference to subsidence being traceable to mining of at least thirty years ago evidences legislative recognition of the proposition that once mined, an area may be prone to subsidence, and does not revert to any former state.

The Pennsylvania courts have clearly enunciated the principles that insurance contracts may be considered contracts of adhesion, and if ambiguous, are to be construed strictly against the insurer. *Mohn v. American Casualty Co.,* 458 Pa. 576, 326 A.2d 346 (1974). Exclusions in an insurance contract will be effective if clearly worded and conspicuously displayed. In addition, "all risk" policies afford coverage for all risks which are not excluded. An "all risk" policy nonetheless requires "fortuitousness" of the risk, an event which we have previously defined as "an event which so far as the parties to the contract are aware, is dependent on chance." *See Compagnie des Bauxites de Guinee v. Insurance Company of North America,* 724 F.2d 369 (3d Cir.1983). Thus our task is to determine whether the earth movement exclusion in the policy at issue is effective to bar coverage under the policy.

We review as well pertinent Pennsylvania law touching upon the burdens the different parties must sustain in insurance actions. In an all risk policy, the insured-plaintiff's prima facie case consists of showing that a loss was sustained and that the loss falls within the risks insured against. *Miller v. Boston Insurance Company,* 420 Pa. 566, 218 A.2d 275 (1966). The burden of proof of the insurance company that a loss comes within the scope of an exception or an exclusion is an affirmative one. It is only when the existence of facts constituting an affirmative defense is admitted by the insured, or is established by uncontradicted testimony in the insured's case, that such burden is removed from the insurance company. *Id.* at 578, 218 A.2d 275.

In this case, it is uncontested that the policy at issue was an "all risk" policy. Further, the occurrence which lead to the damage was "fortuitous" as defined in *Compagnie des Bauxites de Guinee v. Insurance Company of North America,* 724 F.2d 369. There we noted that a fortuitous event is an event which, so far as the parties to the contract are aware, is dependent on chance. It may be beyond the power of any human being to bring the event to pass; it may be within control of third persons, provided that the fact is unknown to the parties. The thrust of the definition is that the occurrence be unplanned and unintentional in nature. *See Compagnie des Bauxites,* 724 F.2d at 372.

The ultimate issue in this summary judgment case is, then, whether the defendant Hartford Insurance Company has sustained its burden of proof that the loss at issue comes within the scope of the insurance exclusion. We find no substantive evidence to support the defendant's contention that the mine subsidence was an excluded risk. The defendant makes much of the fact that the simple linguistic definition of "mine subsidence" is the literal equivalent of earth movement. But, as the district court properly noted, the literal words cannot be given their most inclusive meaning, but must be read in reference to the context and circumstances. To do otherwise would be to render the exclusion effective to bar coverage for situations clearly intended to be covered under the policy.

The defendant's reliance on *Patula v. Northwestern National Insurance Company of Milwaukee*, 329 Pa.Super. 321, 478 A.2d 488 (1984) is misplaced. In *Patula*, a trial court had directed a verdict against the defendant insurer on the question of liability under an insurance policy containing exclusionary language very similar to that in the case before us. The trial court, however, had directed the verdict based on *Hionis v. Northern Mutual Insurance Co.*, 230 Pa.Super. 511, 327 A.2d 363 (1974) a case which was overruled in *Standard Venetian Blind Company v. American Empire Insurance*, 503 Pa. 300, 469 A.2d 563 (1983). Although the Pennsylvania Superior Court found the exclusionary language clear and unambiguous, the court nonetheless remanded the case for a determination of liability and damages.

There is no dispute in this case that the cause of the damage to the Middle School was mine subsidence. The Supreme Court has recently defined mine subsidence as "the lowering of the strata overlying a coal mine, including the land surface, caused by the extraction of underground coal." *Keystone Bituminous Coal Association v. DeBenedictis*, — U.S. ——, 107 S.Ct. 1232, 1236, 94 L.Ed.2d 472 (1987). The definition of mine subsidence given by the Supreme Court would put that particular type of earth movement into the non-excluded category of earth movement that is essentially "non-natural". That is precisely the circumstance in this case. It was the extraction of the underground coal by man which lead ultimately to the subsidence, or movement of the earth overlaying the coal mine.

Therefore, we cannot accept the district court's conclusion that a stable *status quo* came into being after the mine had ceased its full labors. The subsidence which caused the damage in this case was indeed engendered by other than natural causes. It was man's activity of extracting the coal which led ultimately and directly to the subsidence at issue here. Under these circumstances, we cannot say that the earth movement exclusion in the policy included this type of loss.

Since there is a genuine dispute with respect to the cause of the Elm Grove School damage, the particular issue is not amenable to disposition by summary judgment. Upon return to the district court, the insurance company will have full adversarial opportunity to demonstrate that the damage was caused by natural causes, but it cannot defend on the theory that mine subsidence falls within the exclusionary clause of the policy.

IV.

We therefore will reverse the judgment of the district court regarding the defense of the "earth movement" exclusion with respect to the Middle School and remand so that the district court can enter partial summary judgment for the plaintiff Peters Township School District. We will vacate the judgment insofar as it regards the cause of damage to the Elm Grove School and remand for further proceedings as set forth in this opinion. Because they are not before us, we do not address the validity of any other defenses which may be before the district court upon remand.