# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| MARIA L. DICKERSON and CHARLES L. DICKERSON, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | C.A. No. S15C-04-022 MJB |
| NATIONWIDE MUTUAL INSRUANCE COMPANY, A foreign corporation, | ) ) ) ) ) | |
| Defendant. | ) ) | |

## OPINION

**Submitted:** January 15, 2016
**Decided:** April 25, 2016

*Upon Defendant's Motion for Summary Judgment,* **GRANTED.**
*Upon Plaintiff's Motion for Summary Judgment,* **DENIED.**

Barry Guerke, Esquire, Parkowski, Guerke & Swayze, P.A., 116 W. Water Street, P.O. Box 598, Dover, Delaware 19903, *Attorney for Plainitff*.

Louis J. Rizzo, Jr., Esquire, Reger, Rizzo & Darnall, LLP, 1523 Concord Pike, Suite 200, Brandywine Plaza East, Wilmington, Delaware 19803, *Attorney for Defendant*.

**BRADY, J.**

## I. INTRODUCTION

This is an underinsured motorist claim ("UIM") brought by Maria and Charles Dickerson ("Plaintiffs") against Nationwide Mutual Insurance Company ("Defendant").[1] The parties do not dispute the underlying facts. On June 23, 2013, Maria Dickerson was operating a 2003 Toyota Camry, driving northbound on State Route 1 in the left exit lane south of Exit 95 in or near Dover, Delaware.[2] As Maria exited onto Exit 95, a 2010 Dodge Avenger owned by Robin A. Soloman ("Soloman") and operated by Amane Soloman ("Amane"), crossed over the painted median and turned in front of Maria's Camry causing Maria to swerve into the right lane of travel to avoid striking Amane.[3] Maria subsequently struck a curb which caused the Camry to strike an embankment several times and ultimately caused the car to overturn.[4]

The automobile insurance liability company for Soloman and Amane paid the full policy limits of $100,000, Plaintiffs' injuries and damages exceed the total amount paid.[5] In the present matter, Plaintiffs seek a declaratory judgment,[6] pursuant to 10 *Del. C.* § 6501, declaring that the provisions of the amended version of 18 *Del. C.* § 3902 apply to Plaintiffs' claim for UIM benefits.[7]

## II. PROCEDURAL HISTORY

On April 20, 2015, Plaintiffs filed a Complaint[8] and on June 25, 2015, Defendant filed a Motion to Dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be

---

[1] *See* Complaint, Item 1 (April 20, 2015).
[2] Complaint, Item 1, at *1-2 (April 20, 2015).
[3] Complaint, Item 1, at *1-2 (April 20, 2015).
[4] Complaint, Item 1, at *1-2 (April 20, 2015).
[5] Complaint, Item 1, at *4-5 (April 20, 2015).
[6] Although not specifically addressed by the parties, it appears from the complaint that if the version of 18 *Del. C.* § 3902 in effect at the time of the accident is applied Plaintiff cannot recover. *See* Complaint, Item 1, at *4-5 (April 20, 2015) (indicating that the tortfeasors' policy limit was $100,000 and Plaintiffs' uninsured/underinsured motorist coverage was $100,000/$300,000).
[7] Complaint, Item 1, at *7 (April 20, 2015).
[8] Complaint, Item 1 (April 20, 2015).

granted, pursuant to Superior Court Rule of Civil Procedure 12(b)(6).[9] On July 24, 2015, Plaintiffs filed a response to Defendant's Motion to Dismiss[10] and on July 28, 2015, Defendant filed a reply to Plaintiffs' response to the Motion to Dismiss.[11] On August 6, 2015, Plaintiffs filed a Motion for Summary Judgment,[12] which was amended on August 7, 2015.[13]

On August 13, 2015, Plaintiffs sent a letter to the Court arguing that Defendant's Motion to Dismiss had been converted into a Motion for Summary Judgment because "matters outside the pleadings have been presented to, and not excluded by, the Court."[14] Plaintiffs indicated that before the Court were cross motions for summary judgment.[15] On August 13, 2015, Defendant wrote a letter to the Court indicating that there was no objection to Plaintiffs' Motion for Summary Judgment being "considered as a Sur-Reply to the pending Motion to Dismiss."[16] Defendant further noted that "[i]f the Court prefers to have a separate response from defendant to that filing, then defendant agrees that both motions should be heard together."[17]

On January 7, 2016, the Court notified the parties that it intended to convert Defendant's Motion to Dismiss into a Motion for Summary Judgment.[18] The Court instructed the parties to submit any objection by February 5, 2016, and indicate whether either party wished to submit additional documents or argument.[19] On January 7, 2016, Plaintiffs informed the Court that it had no objection to converting Defendant's Motion to Dismiss into a Motion for Summary

---

[9] Def.'s Mot. to Dismiss, Item 5 (June 24, 2015).
[10] Plaintiffs' Opposition to Def.'s Motion to Dismiss, Item 8 (July 24, 2015).
[11] Def.'s Reply to Plaintiffs' Opposition to Def.'s Motion to Dismiss, Item 9 (July 28, 2015).
[12] Plaintiff's Motion for Summary Judgment, Item 10 (Aug. 6, 2015).
[13] Plaintiff's Amended Motion for Summary Judgment, Item 11 (Aug. 7, 2015).
[14] Letter from I Barry Guerke, Esquire, Item 13 (August 12, 2015).
[15] Letter from I Barry Guerke, Esquire, Item 13 (August 12, 2015).
[16] Letter from Lou Rizzo, Esquire, Item 14 (Aug. 13, 2015).
[17] Letter from Lou Rizzo, Esquire, Item 14 (Aug. 13, 2015).
[18] Letter from Judge Brady, Item 17 (Jan. 7, 2016).
[19] Letter from Judge Brady, Item 17 (Jan. 7, 2016).

Judgment and indicated that it had no further materials and argument to submit.[20] On January 12, 2016, Defendant informed the Court that it too had no objection and no further submissions.[21]

On January 15, 2016, the Court informed the parties that Defendant's Motion to Dismiss had been converted into a Motion for Summary Judgment and that the Court had taken the cross motions for summary judgment under advisement.[22] On April 20, 2016, the Court received correspondence from Defendant indicating that a recent decision of the Superior Court addressed similar issues to the ones presented in the instant matter.[23] Specifically, that this Court applied the previous version of 18 *Del. C.* § 3902 to an UIM claim resulting from an accident that occurred prior to the amendment.[24]

The provisions of 18 *Del. C.* § 3902 in effect at the time of the relevant collision ins this case provided that, in order for underinsured motorist coverage to be triggered, the plaintiff needed to have underinsured motorist coverage limits in excess of the tortfeasor's limits.[25] On July 3, 2013, the General Assembly amended 18 *Del. C.* § 3902. Under the amended version, underinsured motorist coverage is triggered so long as the tortfeasor's limits were exhausted and were insufficient to compensate plaintiff's full damages.[26] The new version does not require an accounting of the underinsured motorist coverage limits of the tortfeasor.[27] For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiffs' Motion for Summary Judgment is **DENIED**.

---

[20] Letter from I Barry Guerke, Esquire, Item 18, (Jan. 7, 2016).
[21] Letter from Lou Rizzo, Esquire, Item 19 (Jan. 12, 2016).
[22] Letter from Judge Brady, Item 20 (Jan. 15, 2016).
[23] Letter from Lou Rizzo, Esquire, Item 21 (April 20, 2016) (citing *Moffitt-Ali v. State Farm Mut. Auto. Ins. Co.*, 2016 WL 1424788, at *2 (Del. Super. Ct. Mar. 31, 2016)).
[24] Letter from Lou Rizzo, Esquire, Item 21 (April 20, 2016) (citing *Moffitt-Ali*, 2016 WL 1424788, at *2).
[25] *See* 18 *Del. C.* § 3902(b)(2) (1995).
[26] *See* 18 *Del. C.* § 3902(b)(2).
[27] *See id.*

4

### III. PARTIES CONTENTIONS

### A. Defendant's Contentions

Defendant argues that Plaintiffs' claim for UIM benefits should be governed by the previous version of 18 *Del. C.* § 3902.[28] Specifically, Defendant contends that "[t]he statute expressly provides for prospective application when it states: 'The provisions of this law shall apply to motor vehicle insurance policies issued and/or renewed six (6) months after enactment.'"[29] Defendant further argues that the policy under which Plaintiffs' claim is based falls into the category of "existing policies" which are not affected by the amendment.[30] Defendant notes that Plaintiffs subsequently renewed the policy, but argues that the claim is not being made under the renewed policy, but it is being made under the policy which existed at the time of the accident and is therefore subject to the previous version of 18 *Del. C.* § 3902.[31]

Defendant further argues that Plaintiffs are seeking to have the UIM statute retroactively applied to a policy that was priced, purchased, and issued under the prior statutory scheme for UIM benefits.[32] Defendant notes that Delaware courts disfavor retroactive application of statutory provisions unless it is unmistakable on the face of the statute that the legislature intended such an application.[33] Defendant further notes that Delaware courts have held that any doubt with regard to whether an amended statute was intended to operate retroactively should be resolved against such an application.[34]

---

[28] *See* Def.'s Mot. to Dismiss, Item 5, at *1-2 (June 24, 2015).
[29] Def.'s Mot. to Dismiss, Item 5, at *3 (June 24, 2015).
[30] Def.'s Mot. to Dismiss, Item 5, at *3-4 (June 24, 2015).
[31] Def.'s Mot. to Dismiss, Item 5, at *3-4 (June 24, 2015).
[32] Def.'s Mot. to Dismiss, Item 5, at *4-5 (June 24, 2015).
[33] Def.'s Mot. to Dismiss, Item 5, at *4 (June 24, 2015) (citing *Price v. All American Eng'g Co.*, 320 A.2d 336 (Del. Super. Ct. 1974)).
[34] Def.'s Mot. to Dismiss, Item 5, at *4 (June 24, 2015) (citing *Chrysler Corp. v. State*, 457 A.2d 345, 351 (Del. 1983)).

Defendant argues that the Plaintiffs "confuse[] the concept of what plaintiff must ***prove*** in order to successfully recover UIM benefits with the concept of what ***triggers*** UIM coverage."[35] Specifically, Defendant contends that Plaintiffs must prove exhaustion of liability limits and damages in excess of those limits, whereas the coverage is triggered by the occurrence of the event.[36] Defendant argues that if the Court were to accept Plaintiffs' position, an injured party who has low or no UIM limits on his auto policy and who is involved in an accident with a tortfeasor who has low liability limits, can buy new insurance with high UIM limits and submit a claim under the new policy once the tortfeasor's limits have been exhausted.[37] Defendant argues that such a result is contrary to public policy and the general rule that "one cannot obtain insurance for those losses which are not fortuitous, in other words, for those losses of which the insured knows, plans, intends, or is aware."[38]

## B. Plaintiffs' Contentions

Plaintiffs argue that they are not seeking retroactive application of the amended version of 18 *Del. C.* § 3902.[39] Specifically, Plaintiffs contend that a UIM claim is separate and distinct from a claim against the tortfeasor and that such a claim does not necessarily originate from the date of the accident.[40] Plaintiffs argue that a UIM claim "only comes into existence" when four contingencies are met: (1) the limits of liability under all bodily injury bonds and insurance policies available to the insured at the time of the accident have been exhausted; (2) the UIM carrier received an Affidavit of No Other Insurance in which the tortfeasor driver and, as appropriate, the owner of the vehicle involved, swear no other applicable liability insurance

---

[35] Def.'s Reply to Plaintiff's Opposition to Def.'s Mot. to Dismiss, Item 9, at *2 (July 28, 2015) (emphasis in original).
[36] Def.'s Reply to Plaintiff's Opposition to Def.'s Mot. to Dismiss, Item 9, at *2 (July 28, 2015).
[37] Def.'s Reply to Plaintiff's Opposition to Def.'s Mot. to Dismiss, Item 9, at *3 (July 28, 2015).
[38] Def.'s Reply to Plaintiff's Opposition to Def.'s Mot. to Dismiss, Item 9, at *3 (July 28, 2015).
[39] Plaintiffs' Opposition to Def.'s Motion to Dismiss, Item 8, at *1 (July 24, 2015).
[40] Plaintiffs' Opposition to Def.'s Motion to Dismiss, Item 8, at *2 (July 24, 2015).

exists; (3) the UIM carrier receives an affidavit or certification of those policies; and (4) proof that the case against the tortfeasor has concluded, such as by providing a release or proof of final judgment and the amount.[41] Plaintiffs argue that the four contingencies were not satisfied until October 10, 2014, and therefore the UIM claim did not rise until after Plaintiffs' auto policy with Nationwide renewed for the second time and after expiration of the grace period found in the amended version of 18 *Del. C.* § 3902.[42]

Plaintiffs further argue that the amended version of 18 *Del. C.* § 3902 is unambiguous in its terms regarding applicability.[43] Specifically, Plaintiffs note that Senate Bill No. 61 provides that "[t]he provisions of this law shall apply to motor vehicle insurance policies issued and/or *renewed* six (6) months after enactment."[44] Plaintiffs argue that had the General Assembly intended the reference point to be the date of the collision and injury it would have expressly stated so.[45]

Plaintiffs contend that Defendant's reasonable expectation argument is without merit.[46] Specifically, Plaintiffs note that the Court should interpret the insurance coverage to comport with the insured's reasonable expectation and not the insurer because insurance policies are contracts of adhesion.[47] Plaintiffs argue that the reasonable expectation was that the UIM claim,

---

[41] Plaintiffs' Opposition to Def.'s Motion to Dismiss, Item 8, at *2 (July 24, 2015).
[42] Plaintiff notes that the Release of All Claims was executed on October 10, 2014, the Affidavits of No Other Insurance are dated September 26, 2014, and the Certification of Police Limits provided by Nationwide, the torfeasor's auto carrier, is dated July 11, 2014. *See* Plaintiffs' Opposition to Def.'s Motion to Dismiss, Item 8, at *2-3 (July 24, 2015).
[43] Plaintiffs' Opposition to Def.'s Motion to Dismiss, Item 8, at *3 (July 24, 2015)
[44] Plaintiffs' Opposition to Def.'s Motion to Dismiss, Item 8, at *3 (July 24, 2015) (emphasis in original).
[45] Plaintiffs' Opposition to Def.'s Motion to Dismiss, Item 8, at *3-4 (July 24, 2015).
[46] Plaintiffs' Opposition to Def.'s Motion to Dismiss, Item 8, at *7 (July 24, 2015)
[47] Plaintiffs' Opposition to Def.'s Motion to Dismiss, Item 8, at *7 (July 24, 2015) (citing *State Farm Mut Auto. Ins. Co. v. Johnson*, 320 A.2d 345, 347 (Del. 1974).

which Plaintiffs contend did not come into existence until after the effective date of the amended statute, receives the benefit of the remedial amendment.[48]

Plaintiffs note that they recently discovered that their insurance policy from the period of July 7, 2014 through and including July 5, 2015, made substantial changes from the preceding policy that had an original policy period of July 2014 through January 2015.[49] These changes, Plaintiffs submit, amounted to a new policy within the provision of section 2 of Senate Bill Number 61, which states, in pertinent part, "[t]he provisions of this law shall apply to motor vehicle insurance policies *issued* and/or renewed six (6) months after enactment."[50] Plaintiffs further contend that regardless of whether the policy was issued or renewed, the UIM claim did not come into existence until October 10, 2014, the date the Release of All Claims was executed, which makes the amendment to 18 *Del. C.* § 3902(b)(2) applicable.[51]

Plaintiffs further argue that Defendant's argument that the insurance policies are "occurrence" policies, does not control in this matter because under Delaware law where an automobile policy contains language that conflicts with statutes governing insurance, the statutory provisions and underlying public policy goals control.[52] Plaintiffs note that there are two important public policy goals of the UIM statute: (1) "to promote 'full compensation to all victims of automobile accidents'"; and (2) "to encourage 'the Delaware driving public to purchase more than the statutory minimum amount of automobile insurance coverage.'"[53]

---

[48] Plaintiffs' Opposition to Def.'s Motion to Dismiss, Item 8, at *7 (July 24, 2015).
[49] Plaintiff's Amended Mot. for Summary Judgment, Item 11, at *1-2 (Aug. 7, 2015).
[50] Plaintiff's Amended Mot. for Summary Judgment, Item 11, at *1-2 (Aug. 7, 2015) (citing 79 Del. Laws 2013 Ch. 91) (emphasis in original).
[51] Plaintiff's Amended Mot. for Summary Judgment, Item 11, at *1-2 (Aug. 7, 2015).
[52] Plaintiff's Amended Mot. for Summary Judgment, Item 11, at *2-3 (Aug. 7, 2015) (internal citations omitted).
[53] Plaintiff's Amended Mot. for Summary Judgment, Item 11, at *4 (Aug. 7, 2015) (citing *Harris v. Prudential Prop. & Cas. Ins. Co.*, 632 A.2d 1380, 1382 (Del. 1993); *Nationwide Gen. Ins. Co. v. Seeman*, 702 A.2d 915, 918 (Del. 1997)).

# IV. ANALYSIS

## A. Standard of Review

Generally, a "Motion for Summary Judgment is appropriate where the record indicates that there are no genuine issues of material fact and where, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to summary judgment as a matter of law."[54] The moving party "bears the burden of showing that there are no genuine issues of material fact so that he is entitled to judgment as a matter of law."[55]

## B. Applicable Law

18 *Del. C.* § 3902 was enacted to provide innocent victims of motor vehicle accidents a means of recovering for injuries "inflicted by impecunious tortfeasors."[56] It aims to achieve this objective by permitting "a claim for UIM benefits where an operator of an underinsured motor vehicle causes the claimant bodily injury."[57] The condition precedent to any UIM claim is to show that the tortfeasor was operating an underinsured motor vehicle.[58] This threshold question is governed by 18 *Del. C.* § 3902(b)(2), which was recently amended by the Delaware General Assemble.[59] The previous version of 18 *Del. C.* § 3902(b)(2) defined an underinsured motor vehicle as one where "the limits of bodily injury liability coverage under all bonds and insurance policies applicable at the time of the accident *total less than the limits provided by the uninsured*

---

[54] *Lukk v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 4247767, at *3 (Del. Super. Ct. Aug. 27, 2014) (citing Del. Super. Ct Civ. R. 56(c)).

[55] *Capano v. Lockwood*, 2013 WL 2724634, at *2 (Del. Super. Ct. May 31, 2013) (citing *Moore v. Sizemore*, 405 A.2d 679 (Del. 1979)).

[56] *See Deptula v. Horace Mann Ins. Co*, 842 1235, 1236 (Del. 2004); *see also Hurst v. Nationwide Mut. Ins. Co.*, 652, A.2d 10, 12 (Del. 1995) (citing *Frank v. Horizon Assur. Co*, 553 A.2d 1199, 1201 (Del. 1989)).

[57] *See White v. Liberty Ins. Corp.*, 975 A.2d 786, 788 (Del. 2009) (citing 18 *Del. C.* § 3902(b)(1))).

[58] *See Nationwide Mut. Ins. Co. v. Williams*, 695 A.2d 1124, 1126 (Del. 1997) ("[T]he definition of underinsurance in Section 3902(b)(2) operates as a prerequisite to a right of recovery from the claimant's underinsurance motorist policy.") (citing *Nationwide Mut. Auto. Ins. Co. v. Peebles*, 688 A.2d at 1378).

[59] *See* 18 *Del. C.* § 3902(b)(2) (1995).

*motorist coverage.*"[60] The amended version of 18 *Del. C.* § 3902 defines an underinsured motor vehicle as one where "the limits of bodily injury liability coverage under all bonds and insurance policies applicable at the time of the accident *are less than the damages sustained by the insured.*"[61] Senate Bill No. 61, which amended 18 *Del. C.* § 3902, states in pertinent part, "[t]he provisions of the law will not affect existing insurance policies, and will apply only to renewing or new policies that become effective six (6) months after the law is enacted."[62] The synopsis of Senate Bill No. 61 further explains the legislative intent behind the bill by stating:

> The purpose of this amendment is to allow innocent victims of motor vehicle collisions to access their own underinsured benefits in circumstances where the victim's damages are greater than the amount of the negligent driver's insurance policy limits. Delaware Courts have ruled that if the innocent victim and the negligent driver have the same policy limit or the victim's policy limits are less than the negligent driver's, then the negligent driver is not considered 'underinsured' even if the negligent driver's policy limit is inadequate to compensate the innocent victims. This amendment will rectify these inequities.[63]

An insurer is not obligated to make any UIM payments "until after the limits of liability under all bodily injury bonds and insurance policies available to the insured at the time of the accident have been exhausted by payment of settlement for judgments."[64] As a practical matter, insurers require an insured to submit an Affidavit of No Other Insurance in which the tortfeasor driver and, where appropriate, the owner of the vehicle involved, swear no other applicable liability insurance exists. In addition, insurers require the insured to submit an affidavit or certification of those policy limits and submit proof that the case against the tortfeasor has concluded, if the claim is settled amicably, or proof of final judgment and the amount of same.

---

[60] *Id.*
[61] 18 *Del. C.* § 3902(b)(2).
[62] 79 Laws 2013, ch. 91 § 1.
[63] *Id.*
[64] *See* 18 *Del. C.* § 3902(b)(3).

The Delaware Supreme Court in *Rapposelli v. State Farm Mut. Auto. Ins. Co.*, stated that "victims of accidents caused by underinsured motorists must seek reimbursement for their full compensatory damages under their insurance *contracts* from their carriers. Although an insured claimant must often prove the elements of tortuous conduct, contract law may apply to his claim."[65] The Court went on to note that "parties could resolve the existence of coverage or the length of the statute of limitations before or without knowledge of the accident. On the other hand, damages and fault require knowledge of the accident and its results. While the former set of issues constitutes a contract action, tort law governs the latter set."[66] The Court held that "contract law governs only those aspects of the underinsured motorist claim that are not controlled by the resolution of facts arising from the accident."[67]

Under an "occurrence" insurance policy, an insured "is indemnified for acts or occurrences which take place within the policy period . . ."[68] The insurer's duty to indemnify the insured is "triggered by a determination that fortuitous bodily injury or property damage occurred during the policy period."[69] The general rule is that "one cannot obtain insurance for those losses which are not fortuitous, in other words, for those losses of which the insured knows, plans, intends, or is aware."[70] Delaware Courts have held that it is "contrary to public policy for an insurance company to knowingly assume the burden of a loss that occurred prior to making the contract."[71]

---

[65] *Rapposelli v. State Farm Mut. Auto. Ins. Co.*, 988 A.2d 425, 427 (Del. 2010) (emphasis in original).
[66] *Id.* at 428-29.
[67] *Id.*
[68] *Playtex, Inc. v. Columbia Cas.*, 1993 WL 390469, at *9 (Del. Super. Ct. Sept. 20, 1993) (citing *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 59 (3d Cir. 1982)).
[69] *Id.* (citing *Restatement of Contracts* § 291 comment a (1932); *Peters Township School District v. Hartford Accident & Indem. Co.*, 833 F.2d 32 (3d Cir. 1987)).
[70] *Id.* (citing *Intermetal Mexicana v. Insurance Co. of North America*, 866 F.2d 71 (3d Cir. 1989)).
[71] *Id.* (citing *Burch v. Commonwealth County Mutual Ins. Co. Tex.*, 450 S.W. 2d 838, 840 (1970)).

11

### C. Discussion

The parties do not dispute any material facts, rather, the parties disagree as to whether the amended or prior version of 18 *Del. C.* § 3902 applies to Plaintiffs' claim. The Court finds the undisputed facts are a sufficient basis for determining the legal issue, and, therefore, this case is ripe for summary judgment.

Plaintiffs argue that they are not seeking retroactive application of the amended version of 18 *Del. C.* § 3902, because they are submitting a UIM claim under the new policy issued on July 9, 2014, with a policy period of July 7, 2014 through January 5, 2015.[72] Plaintiffs further contend that the UIM claim did not come into existence until October 10, 2014, the date the Release of All Claims was executed, which makes the amendment to 18 *Del. C.* § 3902(b)(2) applicable.[73] Plaintiffs' arguments are unsupported by Delaware's case law and Plaintiffs' policy terms.

Plaintiffs argue that a UIM claim does not arise or come into existence until the UIM carrier receives an Affidavit of No Other Insurance, an affidavit or certification of those policies, and proof that the case against the tortfeasor has concluded.[74] Certainly, the obligation to pay does not arise until the carrier receives certain documentation, but the obligation is premised on the occurrence of the collision from which the claim originates. The law is settled, and Plaintiffs' policies expressly state, that the applicable policy is the one in effect at the time of the collision.[75]

---

[72] *See* Plaintiffs' Opposition to Def.'s Motion to Dismiss, Item 8 (July 24, 2015).

[73] *See* Def.'s Reply to Plaintiff's Opposition to Def.'s Mot. to Dismiss, Item 9 (July 28, 2015).

[74] Plaintiffs' Opposition to Def.'s Motion to Dismiss, Item 8, at *2 (July 24, 2015).

[75] Both of Plaintiffs' policies at issue here expressly state, "[t]he selected coverages in this policy apply only to occurrences while the policy is in force." Insurance Policy, Exhibit A to Def.'s Reply to Plaintiff's Opposition to Def.'s Mot. to Dismiss, Item 9 (July 28, 2015); *see also* Insurance Policy, Exhibit C to Def.'s Reply to Plaintiff's Opposition to Def.'s Mot. to Dismiss, Item 9 (July 28, 2015).

Both of Plaintiffs' policies, relevant to review in the instant matter, are "occurrence" policies. Specifically, each policy expressly states, "[t]he selected coverages in this policy apply only to occurrences while the policy is in force."[76] By Plaintiffs' own admission, the policy issued on July 9, 2014, is a "new" policy within the provision of section 2 of Senate Bill Number 61,[77] and therefore was not "in force" when the accident occurred.[78] As a result, by the terms of the policy, it does not cover the accident in question.

The insurance policy in effect at the time of the accident was not renewed or issued six months following the amended version of 18 *Del. C.* § 3902. The insurance policy in effect at the time of the accident was an existing insurance policy as of the date 18 *Del. C.* § 3902 was amended. Such policies were expressly excluded from the amended statute's application.[79] Specifically, the General Assembly stated, "[t]he provisions of the law *will not affect existing insurance policies*, and will apply only to renewing or new policies that become effective six (6) months after the law is enacted."[80]

Plaintiffs acknowledge that the insurance policies at issue are "occurrence" policies, but argues such a distinction does not control because, under Delaware law, when an automobile policy contains language that conflicts with statutes governing insurance, the statutory provisions and underlying public policy goals control.[81] While Plaintiffs' statement of the law is accurate, Plaintiffs' argument is not persuasive. The version of 18 *Del. C.* § 3902 in effect at the time of the accident satisfied the underlying public policy goal "to encourage 'the Delaware driving

---

[76] Insurance Policy, Exhibit A to Def.'s Reply to Plaintiff's Opposition to Def.'s Mot. to Dismiss, Item 9 (July 28, 2015); Insurance Policy, Exhibit C to Def.'s Reply to Plaintiff's Opposition to Def.'s Mot. to Dismiss, Item 9 (July 28, 2015).

[77] *See* 79 Laws 2013, ch. 91 § 1.

[78] Plaintiff's insurance policy states that the policy period is from July 7, 2014 through January 5, 2015. Insurance Policy, Exhibit A to Def.'s Reply to Plaintiff's Opposition to Def.'s Mot. to Dismiss, Item 9 (July 28, 2015).

[79] *See* 79 Laws 2013, ch. 91 § 1.

[80] *Id.* (emphasis added).

[81] Plaintiff's Amended Mot. for Summary Judgment, Item 11, at *2-3 (Aug. 7, 2015) (internal citations omitted).

13

public to purchase more than the statutory minimum amount of automobile insurance coverage.'"[82]  Further, by enforcing the policy in effect at the time of the accident, the Court's decision effects Delaware's public policy that insurance companies should not knowingly assume the burden of a loss that occurred prior to making the contract.[83]

Recently, this Court decided an issue similar to the one presented in the instant matter.[84]  In *Moffitt-Ali*, the plaintiff filed a claim for UIM coverage relating to injuries sustained in a motor vehicle collision on December 2, 2012.[85]  That Court noted that the definition for an underinsured motor vehicle had recently changed with an amendment to 18 *Del. C.* § 3902, but subsequent to the accident in question in that case.[86]  The Court, referring to plaintiff's policy *in effect at the time of the accident*, determined that the amendment did not apply because the policy was not renewed or secured after the amendment's July 3, 2013 effective date.[87]

*Moffitt-Ali* is analogous to the instant case.  The accident in question occurred prior to the amendment of 18 *Del. C.* § 3902.  The policy at issue here, as in *Moffitt-Ali*, is the policy in effect at the time of the accident.  This result is legally correct and consistent with both Delaware's case law and the expressed language of the previous version of 18 *Del. C.* § 3902 which referenced the policies in effect "at the time of the accident."[88]

---

[82] *See Harris*, 632 A.2d at 1382; *see also Seeman*, 702 A.2d at 918.
[83] *Playtex, Inc.*, 1993 WL 390469, at *9 (citing *Burch*, 450 S.W. 2d at 840).
[84] *Moffitt-Ali*, 2016 WL 1424788, at *2.
[85] *Id.*
[86] *Id.*
[87] *Id.*
[88] 18 *Del. C.* § 3902(b)(2) (1995) ("one for which there may be bodily injury liability coverage in effect, but the limits of bodily injury liability coverage under all bonds and insurance policies *applicable at the time of the accident* are less than the damages sustained by the insured.") (emphasis added).

## V. CONCLUSION

For these reasons, the Court finds that the amended version of 18 *Del. C.* § 3902 is inapplicable to Plaintiffs' UIM claim. As a result, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiffs' Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

_____/s/_____
**M. JANE BRADY**
Superior Court Judge